[Crim. No. 13655. Third Dist. Feb. 11, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM REBER et al., Defendants and Appellants.

524

COUNSEL

Don Chairez, under appointment by the Court of Appeal, for Defendants and Appellants.

John K. Van de Kamp, Attorney General, Joel Carey and Richard Thomson, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

PUGLIA, P. J.—Defendants were convicted by a jury of felony false imprisonment (Pen. Code, § 236), two counts of kidnapping (Pen. Code, § 207), and assault with a deadly weapon (Pen. Code, § 245, subd. (a)). The jury found that in commission of the assault, the defendants inflicted great bodily injury (Pen. Code, § 12022.7). Defendants were also convicted of attempted sodomy in concert (Pen. Code, §§ 664/286, subd. (d)), oral copulation in concert (Pen. Code, § 288a, subd. (d)), and five counts of rape in concert (Pen. Code, §§ 261, subd. (2)/264.1). Defendant William Reber alone was found guilty of anal penetration with a foreign object (Pen. Code, § 289, subd. (a)). The nonsexual offenses and the foreign object anal penetration were perpetrated upon a male victim; the remaining sexual offenses were perpetrated upon a female victim.

On appeal, defendants contend that (1) an order protecting the victims' psychotherapy records from discovery and use at trial violated their Sixth Amendment right to confrontation, (2) the court's refusal to order a psychiatric examination of the complaining witnesses hindered defendants' ability to assess the witnesses' competency to testify, and (3) the evidence was insufficient to sustain convictions for kidnapping. Although we conclude defendants' first argument has merit, defendants suffered no prejudice which would warrant reversal of the judgments of conviction. (See Cal. Const., art. VI, § 13.) We shall affirm.

The male victim, James D., is developmentally handicapped and retarded. According to his testimony, defendants befriended him. More accurately, they first ingratiatingly insinuated themselves into his confidence and then secured his participation in their perverted schemes with thinly veiled threats bolstered by the actual infliction of violence.

During the first week of May 1982, James accompanied defendants to their house at their invitation. While there, defendants whipped him with a belt, urinated on him, and forced him to orally copulate a dog. They cut portions of his hair and tied him up in a closet where he remained all night until released the next morning. This episode forms the basis of the kidnapping charged in count I as to which defendants were found guilty of the lesser included offense of felony false imprisonment.

Several days later, defendants approached James and told him to return with them to their house. James complied because he was "scared" of defendants. Once there, defendants again whipped him with a belt, urinated on him, forced him to orally copulate the dog, and shaved off the rest of his hair. Defendant William Reber "jammed" a mop handle "an inch or an inch-and-a-half" "up [his] rear" after which both defendants tied him up, placed him in a closet, and kicked him. He was released after spending the night chained in the bathroom. This episode forms the basis of the kidnapping charged in count II of which both defendants were convicted and the anal penetration with a foreign object charged in count V of which defendant William Reber alone was convicted.

A few days later, defendants again told James to accompany them to their house; he complied because he thought "worse" things would happen if he did not. Once there, defendants threatened to castrate him with knives and ordered him to remove his clothes. Defendants whipped him with a belt, forced him to orally copulate the dog, burned him twice on the chest with cigarettes, and lowered him from a second story window by a rope tied to his feet. After his mustache and eyebrows were shaved off, the victim was chained in a closet and kicked a number of times in the groin. Later, defendants pulled out or broke off most of his teeth with a pair of pliers and doused him with scalding and cold water. For a period of days, the victim remained chained to defendants' toilet during the night and chained to a couch during the day. Eventually, he stayed in the house without being chained, during which time the female victim arrived. This episode forms the basis of the kidnapping charged in count III and the assault with a deadly weapon charged in count IV. Defendants were each convicted on these counts.

The female victim, Cherron W., suffered from chronic mental illness. She had known defendants for about a year and, to her ultimate misfortune,

considered them to be her friends. Defendants invited her to their house. When she arrived, they chained her, whipped her with a fly swatter, forced her to undress, urinated on her, cut off her hair, and beat her with a belt. On defendants' orders, she orally copulated James and he attempted to sodomize her. Defendants then compelled Cherron to have intercourse with each of them. They raped her three more times while she was chained to the toilet for the night. She remained chained at different locations in the house for the next five or six days. This episode forms the basis of the attempted sodomy in concert charged in count VII, the oral copulation in concert charged in count VIII, and five counts of rape in concert charged in counts IX through XIII. Both defendants were convicted on all these counts.

Walter Reber testified that James orally copulated the dog voluntarily and allowed himself to be tied up in various poses and photographed so that the pictures could be sold to magazines. The pictures were admitted into evidence. He denied James was struck with a mop handle, chained to a toilet, or threatened with castration. He testified James's hair had been cut and his head shaved because he had gotten paint on his head; his teeth reportedly were knocked out by two black men using a piece of pipe. Defendant Walter Reber also denied ever chaining, tying, or otherwise abusing Cherron. He admitted the sexual acts which she described had occurred but testified they all were voluntary on her part.

Defendant William Reber did not testify.

I

■ Defendants obtained a subpoena duces tecum to secure from non-parties medical records relating to psychotherapy administered to the two complaining witnesses. (See *Pacific Lighting Leasing Co.* v. *Superior Court* (1976) 60 Cal.App.3d 552, 559-567 [131 Cal.Rptr. 559]; *People* v. *Superior Court (McKunes)* (1976) 62 Cal.App.3d 853, 857-858 [133 Cal.Rptr. 440].) Prior to trial, the prosecution moved to quash defendants' subpoena duces tecum and sought a protective order covering certain such records of the female victim which had already been released to defendants. Both motions were predicated on the psychotherapist-patient privilege of Evidence Code section 1014. Defendants opposed the motion, arguing that their Sixth Amendment right to confront the witnesses outweighed the statutory privilege protecting patient privacy. They asserted that the records in question would reveal that both complaining witnesses had a long history of paranoid schizophrenia, accompanied by periods of delusion and hallucination. The female victim's psychotherapy records had already been made available to

the defense. Confidential communications contained in those records documented instances when she had hallucinated sexual attacks by men.

After conducting an in camera examination of at least some of the records under subpoena, the court issued a partial protective order (1) precluding further discovery and evidentiary use of confidential communications between the patient-witnesses and their psychotherapists but (2) making available for defendants' use at trial all other records concerning the mental condition of the witnesses which revealed that either had suffered from "hallucinations or delusions of a severe nature." The ruling was based on then extant Evidence Code section 1028 (repealed Stats. 1985, ch. 1077), which limited the psychotherapist-patient privilege in a criminal proceeding to patient relationships with psychiatrists and licensed psychologists, excluding other credentialed mental health therapists. (See *People* v. *Gomez* (1982) 134 Cal.App.3d 874, 880 [185 Cal.Rptr. 155].)

At trial, defendants again requested they be allowed to use the protected psychotherapy records of both victims on cross-examination. The court adhered to the earlier ruling and also limited inquiry into the nonprivileged history of the witnesses' mental deficiencies to the immediately preceding 10-year period because "beyond that, it would [not] be relevant." (See Evid. Code, § 352.)

Defendants rely principally on *Davis* v. *Alaska* (1974) 415 U.S. 308 [39 L.Ed.2d 347, 94 S.Ct. 1105] to support their claim that the challenged discovery and evidentiary rulings effectively denied them their Sixth Amendment confrontation rights. In *Davis,* the prosecution obtained a protective order preventing the defense from cross-examining the key prosecution witness concerning his probation status. The order was based on an Alaska statute protecting the anonymity of juvenile offenders. Reversing the conviction, the United States Supreme Court held that the right of confrontation was paramount to the state's policy of protecting anonymity of the juvenile offender. Whatever temporary embarrassment might result to the witness and his family by disclosure of his juvenile record was outweighed by the defendant's "right to probe into the influence of possible bias in the testimony of a crucial identification witness." (*Id.,* 415 U.S. at p. 319 [39 L.Ed.2d at p. 355].) The high court reasoned that the Sixth Amendment guarantee that an accused in a criminal prosecution "'be confronted with the witnesses against him'" means more than confronting the witnesses physically. The primary right secured by confrontation is cross-examination. (*Id.,* 415 U.S. at p. 315 [39 L.Ed.2d at p. 353].) "Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-

examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness." (*Id.*, 415 U.S. at p. 316 [39 L.Ed.2d at p. 353].) "While counsel was permitted to ask [the witness] *whether* he was biased, counsel was unable to make a record from which to argue *why* [the witness] might have been biased *or* otherwise lacked that degree of impartiality expected of a witness at trial." (*Id.*, 415 U.S. at p. 318 [39 L.Ed.2d at p. 355], italics in original.)

We have found no California case which has considered the implications of *Davis* in relation to the psychotherapist-patient privilege. (Cf. *Hammarley* v. *Superior Court* (1979) 89 Cal.App.3d 388, 398-401 [153 Cal.Rptr. 608], concerning a newsman's statutory immunity from contempt for refusing to disclose sources or unpublished information. (Evid. Code, § 1070.)) But decisions from other states hold that there are circumstances where the psychotherapist-patient privilege must yield to a criminal defendant's right to confrontation and cross-examination. "The capacity of a witness to observe, recollect and narrate an occurrence is a proper subject of inquiry on cross-examination. If as a result of a mental condition such capacity has been substantially diminished, evidence of that condition before, at and after the occurrence . . . is ordinarily admissible for use by the trier in passing on the credibility of the witness." (*State* v. *Esposito* (1984) 192 Conn. 166 [471 A.2d 949, 955]; see also *People* v. *Di Maso* (1981) 100 Ill. App.3d 338 [55 Ill. Dec. 647, 426 N.Ed.2d 972, 975]; 3A Wigmore, Evidence (Chadbourn rev. ed. 1970) §§ 931, 989, pp. 758, 921-922.) Certain types of mental disorders are highly probative on the issue of a witness' credibility. For example, the veracity of one afflicted with a psychosis such as paranoid schizophrenia may be impaired by distortions in his ability to perceive and recall events; a schizophrenic who suffers delusions and hallucinations may have difficulty distinguishing fact from fantasy. (*United States* v. *Lindstrom* (11th Cir. 1983) 698 F.2d 1154, 1160; see also Juviler, *Psychiatric Opinions as to Credibility of Witnesses: A Suggested Approach,* (1960) 48 Cal.L.Rev. 648, 648.) Where psychotherapy records contain evidence of such disorders especially probative of the ability of an important prosecution witness to comprehend and accurately relate the subject of his testimony, the constitutional confrontation clause has been held to prevail over a statutory privilege. (See *People* v. *Di Maso, supra,* 426 N.E.2d at p. 975; *State* v. *Storlazzi* (1983) 191 Conn. 453 [464 A.2d 829, 833].) While the state has an important interest in assuring the confidentiality of communications between patient and psychotherapist so as to encourage persons freely to seek counseling in times of mental or emotional distress (*In re Lifschutz* (1970) 2 Cal.3d 415, 422 [85 Cal.Rptr. 829, 467 P.2d 557, 44 A.L.R.3d 1]; Legis. Committee com., 29B West's Ann. Evid. Code, § 1014 (1966 ed.) p. 621), the need in a criminal proceeding to ascertain

the truth through cross-examination may be more compelling. (See *In re Lifschutz,* at p. 422; *People* v. *Stritzinger* (1983) 34 Cal.3d 505, 511-514 [194 Cal.Rptr. 431, 668 P.2d 738]; *Trammel* v. *United States* (1980) 445 U.S. 40, 50-53 [63 L.Ed.2d 186, 194-196, 100 S.Ct. 906].)

In *Davis* v. *Alaska, supra,* the Sixth Amendment confrontation right arose at the time of trial. Here, the assertion of the right arises in the context of pretrial discovery. The distinction, however, is one without a difference. ■ The exercise of the power of a trial court to provide for discovery in criminal cases is consistent with " 'the fundamental proposition that [the accused] is entitled to a fair trial and an intelligent defense in light of all relevant and reasonably accessible information.' " (*People* v. *Memro* (1985) 38 Cal.3d 658, 677 [214 Cal.Rptr. 832, 700 P.2d 446], quoting *Pitchess* v. *Superior Court* (1974) 11 Cal.3d 531, 535 [113 Cal.Rptr. 897, 522 P.2d 305]; *Hammarley* v. *Superior Court, supra,* 89 Cal.App.3d at pp. 398-399.) An accused is entitled to any " 'pretrial knowledge of any unprivileged evidence, or information that might lead to the discovery of evidence, if it appears reasonable that such knowledge will assist him in preparing his defense. . . .' " (*Memro,* at p. 677, quoting *Ballard* v. *Superior Court* (1966) 64 Cal.2d 159, 167 [49 Cal.Rptr. 302, 410 P.2d 838, 18 A.L.R.3d 1416], and Traynor, *Ground Lost and Found in Criminal Discovery* (1964) 39 N.Y.U. L.Rev. 228, 244.) One of the legitimate goals of discovery is to obtain information " 'for possible use to impeach or cross-examine an adverse witness . . . .' " (*Memro,* at p. 677, quoting *Foster* v. *Superior Court* (1980) 107 Cal.App.3d 218, 227 [165 Cal.Rptr. 701].) " '[A]bsent some governmental requirement that information be kept confidential . . . the state has no interest in denying the accused access to all evidence that can throw light on issues in the case, and in particular it has no interest in convicting on the testimony of witnesses who have not been as rigorously cross-examined and as thoroughly impeached as the evidence permits.' " (*Memro,* at p. 677, quoting *People* v. *Riser* (1956) 47 Cal.2d 566, 586 [305 P.2d 1].)

■ Applying these principles to the present circumstances we conclude that adherence to a statutory privilege of confidentiality must give way to pretrial access when it would deprive a defendant of the constitutional right of confrontation and cross-examination. (*Hammarley,* at pp. 398-401.)

In the instant case, defendants established good cause for the discovery of the complaining witnesses' psychotherapy records, insofar as those records contained evidence of psychotic or hallucinatory behavior relevant to credibility. Since defendants had no prior access to the psychotherapy records of the male victim, it was unnecessary to allege with particularity the information they were seeking. (See *Memro, supra,* 38 Cal.3d at pp. 683-

684.) From the information already released, they were able to and did connect specific facts in issue with recorded instances when the female victim had hallucinated sexual attacks.

Notwithstanding the adequacy of defendants' showing of good cause, their entitlement to discovery was not absolute as to those matters in the records which were privileged. The privilege may be overriden only if and to the extent necessary to ensure defendants' constitutional rights of confrontation. Given defendants' showing of good cause, the trial court should have obtained all the records under subpoena, and determined whether defendants' fundamental rights could be adequately protected by access to nonprivileged material and if not, the extent to which access to privileged material was necessary for that purpose. (Cf. Evid. Code, § 915 which denies the court the power to "require disclosure of information claimed to be privileged . . . in order to rule on the claim of privilege.") Here the trial court had at least some of the psychotherapy records of the female victim before it and did examine them in camera. There is no indication, however, that the trial court weighed defendants' need for access to the privileged portions of that material in light of defendants' showing of need in order to vindicate their rights of confrontation. It would appear the trial court simply identified all privileged matter and protected it without consideration of defendants' asserted need for access. Moreover, the trial court's ruling is essentially unreviewable because we are unable to determine with certainty from the record the nature and extent of the materials which were examined in camera. Only those medical records of the female victim released to defendants before the pretrial hearing are in the record on appeal. It is not clear if other records under subpoena were examined by the court and perhaps returned to the custodian after the court made its protective order.

Accordingly, the trial court erred to the extent it failed to (1) obtain and examine in camera all the materials under subpoena, (2) weigh defendants' constitutionally based claim of need against the statutory privilege invoked by the People, (3) determine which privileged matters, if any, were essential to the vindication of defendants' rights of confrontation and (4) create a record adequate to review its ruling.[1] The error, however, compels reversal of the convictions only if defendants demonstrate actual prejudice. (*Memro, supra,* 38 Cal.3d at p. 684, citing *People* v. *Sewell* (1978) 20 Cal.3d 639, 646 [143 Cal.Rptr. 879, 574 P.2d 1231] and *People* v. *Coyer* (1983) 142 Cal.App.3d 839, 843 [191 Cal.Rptr. 376]; *United States* v. *Bagley* (1985) 473 U.S. — [87 L.Ed.2d 481, 491, 105 S.Ct. 3375].)

---

[1]Privileged matters which remain protected should of course be maintained in the record under seal of confidentiality accessible only to a court (see Evid. Code, § 1042, subd. (d)).

Initially, we note there was no direct restriction on the scope of cross-examination. (See *United States* v. *Bagley, supra,* 473 U.S. at p. — [87 L.Ed.2d at p. 490].) As expressed in *California* v. *Green* (1970) 399 U.S. 149, 157 [26 L.Ed.2d 489, 496, 90 S.Ct. 1930], it is the "literal right to 'confront' the witness at the time of trial that forms the core of the values furthered by the Confrontation Clause: . . ." (See also *Delaware* v. *Fensterer* (1985) 474 U.S. — [88 L.Ed.2d 15, 18, 106 S.Ct. 292].) The error here resulted from the court's failure to weigh and determine the need for defense access to information that *might* have been helpful in conducting the cross-examination of the complaining witnesses. (See *Bagley,* 473 U.S. at p. — [87 L.Ed.2d at p. 491].)[2]

In light of the whole record, we conclude there is no reasonable probability here that the protected psychotherapy records could have materially assisted the defense in such a way as to undermine confidence in the outcome of the trial. (See *Bagley,* 473 U.S. at pp. —— [87 L.Ed.2d at pp. 491-494]; *In re Ricky B.* (1978) 82 Cal.App.3d 106, 114 [146 Cal.Rptr. 828].) Despite the court's rulings, evidence before the jury established that both complaining witnesses had been hospitalized and confined in mental health facilities over the immediately preceding 10-year period. At the time of the alleged offenses, they were both on psychotropic medication and receiving SSI disability benefits.

The suppressed evidence of the female victim's psychotic propensities was of course relevant to show that she may have fantasized the charged sexual acts with defendants and the male victim. She denied she had ever hallucinated in the preceding 10 years. However, evidence disclosed that she was under conservatorship at the time of the offenses and previously had been hospitalized by mental health professionals who believed her to be hallucinating at that time. Some of her reported delusions had sexual overtones.

Moreover, defendant Walter Reber testified at trial that the charged sexual acts did in fact occur as described by the female victim and tendered the defense of her consent. The male victim's testimony also independently corroborated that defendants committed the violent acts against the female victim to which he was witness. Since the suppressed evidence would have shed little additional light on the issues tendered, no prejudice exists which would require reversal of defendants' convictions for sex offenses committed against the female victim.

---

[2]We do not fault the trial court for failing to anticipate the outcome of an appellate decision on this issue of first impression.

Although we can only speculate as to what the psychotherapy records of the male victim would have uncovered, the jury nonetheless was openly apprised of James' history of mental illness and tendencies to fantasize so as to place in issue his capacity to observe, recollect, and narrate the events to which he testified. James denied difficulty in recollecting events except for one time when he had heard "voices" talking to him. His former landlord testified, however, that he had a tendency to fantasize because of his "slightly retarded" condition. Among his fantasies, known to be untrue, were that he was a boxer named "Chimp" and the father of children. The jury also was able to deduce the witness' apparent mental retardation from his in-court demeanor. Moreover, the circumstantial evidence introduced at trial overwhelmingly refutes any theory that James fabricated out of whole cloth the circumstances surrounding the charges. Pictures taken by defendants and admitted in evidence showed James orally copulating the dog, James with his hands tied behind his back and James with missing teeth, burns on his body, and with his head shaved. Chains were also found and photographed in defendants' house. The dentist who examined the damage done to James' teeth doubted that such damage could have been caused by a pipe. Upon this record it is difficult, if not impossible, to conceive how a different verdict might have been reached had the defense been given access to the undisclosed contents of the male victim's psychotherapy records. No prejudice is shown as to defendants' convictions of false imprisonment, kidnapping, and felony assault or as to defendant William Reber's conviction of foreign object sodomy.

## II

■ Defendants contend it was error to deny their motion to compel the two complaining witnesses to submit to a psychiatric examination for the purpose of determining whether their "mental or emotional condition" affected their "competence and/or credibility" as witnesses. Penal Code section 1112 precludes ordering a psychiatric examination for the purpose of evaluating the witness' "credibility." Defendants point out that section 1112 does not apply to the evaluation of a witness' competency. (*People* v. *Armbruster* (1985) 163 Cal.App.3d 660, 663, particularly at fn. 1 [210 Cal.Rptr. 11].) However, defendants never challenged the competency of the victims to testify at trial, as was their burden. (*Id.*, at p. 663, fn. 1; see also Evid. Code, §§ 700, 701; Witkin, Cal. Evidence (2d ed. 1966) § 768; *People* v. *Farley* (1979) 90 Cal.App.3d 851, 868-869 [153 Cal.Rptr. 695, 12 A.L.R.4th 301].) Hence there was no competency ruling which could operate to defendants' prejudice.

## III

■ Defendants contend the evidence was insufficient to support convictions for kidnapping. They rely on *People* v. *Green* (1980) 27 Cal.3d 1 [164

Cal.Rptr. 1, 609 P.2d 468], where the court held that asportation accomplished by fraud does not constitute kidnapping. (At pp. 62-65.)

In this case, the male victim testified that he accompanied defendants to their house on the second and third occasions only out of fear. Given the evidence of the atrocities committed against him on the first visit, a reasonable inference arises that the male victim was indeed impelled by fear of defendants to accompany them to their home. The use of force *or* fear to transport a victim will sustain a kidnapping conviction. (*People* v. *Alcala* (1984) 36 Cal.3d 604, 621-622 [205 Cal.Rptr. 775, 685 P.2d 1126]; see also *Green*, at pp. 63-64.)

IV

The record discloses two sentencing errors:

■ The trial court utilized section 667.6, subdivision (d), to impose full consecutive terms of four years and six months on the convictions for attempted sodomy in concert. (Count VII.) Attempted sodomy in concert (Pen. Code, §§ 664/286, subd. (d)) is not an offense for which a fully consecutive sentence under Penal Code section 667.6, subdivision (d), may be imposed. (See *People* v. *Le* (1984) 154 Cal.App.3d 1, 10-11 [200 Cal.Rptr. 839].)

■ Under Penal Code section 667.6, subdivision (c), defendants were sentenced to full consecutive nine-year terms for violating Penal Code section 288a, subdivision (d). As it read at the relevant time, section 667.6, subdivision (c) did not apply to a violation of section 288a unless it was shown the offense was accomplished by "force, violence, duress, menace or *threat of great bodily harm*. . . ." (Italics added.) However, the jury was instructed according to the language of section 288a, subdivision (d), that "fear of immediate and unlawful bodily injury" would support a conviction.[3] Since it cannot be determined whether the jury found at least one of the factors essential to activate section 667.6, subdivision (c), and did not base its conviction for violation of section 288a, subdivision (d) entirely on "fear of immediate and unlawful bodily injury," imposition of the full-term consecutive sentence was improper. (See *People* v. *Reyes* (1984) 153 Cal.App.3d 803, 811-813 [200 Cal.Rptr. 651]; *People* v. *Foley* (1985) 170 Cal.App.3d 1039, 1050-1057 [216 Cal.Rptr. 865]; *People* v. *Riffey* (1985) 171 Cal.App.3d 419, 424 [217 Cal.Rptr. 319].)

---

[3] Penal Code section 667.6 was recently amended to conform its requirements to those of Penal Code section 288a, subdivisions (c) and (d) (Stats. 1985, ch. 401, § 1, eff. July 30, 1985).

The convictions are affirmed. The sentence is vacated and the matter remanded for resentencing, with instructions to correct the enumerated sentencing errors.

Regan, J., and Carr, J., concurred.

Appellants' petition for review by the Supreme Court was denied May 1, 1986.