[No. F009831. Fifth Dist. Aug. 2, 1988.]

FARRELL L., Petitioner, v.
THE SUPERIOR COURT OF FRESNO COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**[Opinion certified for partial publication.\*]**

---

\*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts I and II.

**COUNSEL**

Jose R. Villarreal, Public Defender, and Michael J. Feinberg, Deputy Public Defender, for Petitioner.

No appearance for Respondent.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Michael J. Weinberger and James T. McNally, Deputy Attorneys General, for Real Party in Interest.

**OPINION**

MARTIN, Acting P. J.—On November 10, 1987, an information was filed in the Fresno County Superior Court charging petitioner with a violation of Penal Code section 261, subdivision (2)[1] with a section 12022, subdivision (b) enhancement (count I); a violation of section 289, subdivision (a) with a section 12022, subdivision (b) enhancement (count II); section 288a, subdivision (c) with a section 12022, subdivision (b) enhancement (count III); section 261, subdivision (2) with a section 12022, subdivision (b) enhancement (count IV); section 286, subdivision (c) with a 12022, subdivision (b) enhancement (count V); section 289, subdivision (a) with a section 12022, subdivision (b) enhancement (count VI); section 261, subdivision (2) with a section 12022, subdivision (b) enhancement (count VII); section 289, subdivision (a) (count VIII); section 261, subdivision (2) (counts X and XI); section 647a (count XII); section 220 (count XIII); section 245, subdivision (a)(1) (count XIV); and section 245, subdivision (a)(2) (count XV).

On December 11, 1987, petitioner filed a section 995 motion to dismiss counts I through XIII. A hearing was held, after which the motion to

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

dismiss was granted as to counts III, IV, V, VI, VII, XII and XIII. The motion was denied as to counts I, II, VIII, IX, X and XI.

On January 8, 1988, a first amended information was filed charging petitioner in count I with a violation of section 261, subdivision (2) and a section 12022, subdivision (b) enhancement; in count II with a violation of section 289, subdivision (a) [penetration by a foreign object] plus a section 12022, subdivision (b) enhancement; in counts III and IV with a violation of section 285 [incest] with a section 12022, subdivision (b) enhancement; in count V with a violation of section 289, subdivision (a); in counts VI, VII and VIII with violations of section 261, subdivision (2) [rape by force or fear]; in count IX with a violation of section 245, subdivision (a)(1) [assault with a deadly weapon]; and in count X with a violation of section 245, subdivision (a)(2) [assault with a firearm].

A petition for writ of prohibition and/or alternative writ of mandate was filed with this court requesting respondent court be compelled to vacate its order denying petitioner's motion to dismiss the information regarding counts I, II, V, VI, VII and VIII of the amended information pursuant to section 995, on the grounds that the magistrate wrongfully admitted evidence of crimes outside the County of Fresno but within the State of California and that the magistrate improperly ruled that the defense could not cross-examine the prosecutrix regarding persons in her therapy group at Napa State Hospital she had told of the offenses committed against her. A response to said petition was filed on February 8, 1988, pursuant to an order of this court. On March 21, 1988, this court issued an order to show cause.

### FACTS

C., the 17-year-old daughter of petitioner, lived with her sister in Los Angeles. She had not seen her father since she was 15 years old.

In January of 1987, C. had been visiting in Fresno for about a week when petitioner, a truck driver, indicated he wished her to accompany him on a trip so that he could get to know her. She did not want to go and tried to avoid going as she was afraid her father would drink to excess and hit her, as that is "how he's always been." Petitioner indicated they would be back in a couple of days but, in fact, they were gone 12 days, traveling between Fresno, Nogales, Mexico, San Francisco and back to Fresno. The first destination was San Francisco to pick up some produce. From San Francisco, C. was not sure where they went. She testified the two of them traveled back and forth from Nogales to San Francisco and drove all day and all night and slept "every once in awhile." Nogales was the first place C. remembers sleeping. Although petitioner had not suggested they have

sexual relations prior to their reaching Nogales, once in the motel room there petitioner hit her and frightened her, thereby forcing her to have sexual intercourse and commit other sexual acts with him. C. testified she does not remember everything that happened on the trip because she and petitioner were "doing crank."

After they left Nogales, they traveled to San Francisco and on the outskirts of San Francisco, they slept in the truck where petitioner again forced C. to have sexual intercourse with him. A couple of days later at a truckstop between 30 and 40 miles outside of San Francisco, a third incident in which petitioner forced C. to have sexual intercourse with him occurred.

Petitioner again forced C. to have sexual intercourse with him in the truck when they were about 30 minutes outside of Fresno, California. Petitioner ordered C. to get undressed and had sexual intercourse with her, telling her that this was his way of expressing how much he loved her.

On April 6, 1987, petitioner and C. spent the night at the residence of the petitioner's mother, on Belmont Avenue in Fresno, California. During the course of the evening, petitioner consumed alcohol and became violent. He hit C. in the face and on her collarbone and threatened to kill her. Petitioner had two pocketknives and threw one on the table and the other at C. Petitioner then seemed to calm down and C. went into the bedroom to go to sleep. Petitioner subsequently entered the room, shut the door and got into bed with her. Petitioner placed his hands on her vagina and penetrated her vagina with his fingers. She protested but he said "he was going to do what he wanted . . ." and told her to "shut up." He insisted she remove her pants and she complied. He then proceeded to have sexual intercourse with her.

Discussion *

I., II.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

### III.  Denial of Sixth Amendment Right to Cross-examine Witnesses

Petitioner claims he was deprived of his Sixth Amendment right to confront the witnesses against him when he was denied opportunity to

---

* See footnote, *ante,* page 521.

cross-examine C. regarding the names of people within her counseling program at the Napa State Hospital to whom she had revealed details of the offenses allegedly perpetrated against her. Petitioner urges that her testimony be stricken and once stricken there would be no evidence against petitioner regarding counts I, II, V, VI, VII and VIII and, accordingly, those counts would have to be dismissed.

■ The right of an accused in a criminal case to confront the witnesses against him is a fundamental right secured by the Sixth and Fourteenth Amendments and article I, section 14, of the California Constitution. (*Pointer* v. *Texas* (1965) 380 U.S. 400, 403 [13 L.Ed.2d 923, 926, 85 S.Ct. 1065]; *Davis* v. *Alaska* (1974) 415 U.S. 308, 315 [39 L.Ed.2d 347, 353, 94 S.Ct. 1105].) "[C]ross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested." (*Davis, supra*, 415 U.S. at p. 316 [39 L.Ed.2d at p. 353].)

■ C. stated she was unable to provide the names of the persons in her group on the ground of confidentiality. After a hearing in chambers in which C.'s counselor at the state hospital testified, the trial court refused to allow defense counsel to proceed with this line of cross-examination on the basis that it fell within the psychotherapist-patient privilege set forth in Evidence Code sections 1010 to 1014.

The first question we must answer is whether or not the information sought falls within the privilege. If so, we must determine whether the privilege must give way to permit petitioner his fundamental right to a fair trial.

Evidence Code section 1012 defines a confidential communication between a patient and psychotherapist as: ". . . information, including information obtained by an examination of the patient, transmitted between a patient and his psychotherapist in the course of that relationship and in confidence by a means which, so far as the patient is aware, discloses information to no third persons other than those who are present to further the interest of the patient in the consultation, or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the psychotherapist is consulted, . . ."

In *People* v. *Gomez* (1982) 134 Cal.App.3d 874 [185 Cal.Rptr. 155], the defendant alleged statements made to family court student interns were privileged. The court noted the privilege extended to virtually every licensed class of therapists but held it did not apply to student interns. (*Id.* at pp. 880-881.) The court went on to state, however, under some circumstances, that communications to student interns could be privileged if the

students were working under the supervision of a therapist to whom the privilege attached. (*Id.* at p. 881, fn. 3.)

The question here is whether communications made by a patient to other persons participating in a group therapy session come within the psychotherapist-patient privilege. The parties do not cite nor has our independent research uncovered a case on point. In our view, the other participants in a group therapy session are "those who are present to further the interest of the patient in the consultation . . . or the accomplishment of the purpose for which the psychotherapist is consulted . . . ." (Evid. Code, § 1012.) The language of Evidence Code section 1012 plainly indicates that communications made by patients to persons who are present to further the interests of the patient comes within the privilege. "Group therapy" is designed to provide comfort and revelation to the patient who shares similar experiences and/or difficulties with other like persons within the group. The presence of each person is for the benefit of the others, including the witness/patient, and is designed to facilitate the patient's treatment. Communications such as these, when made in confidence, should not operate to destroy the privilege.

An analogy may be made to the cases decided under Evidence Code section 912, i.e., waiver of otherwise privileged communications which are disclosed to others in the course of accomplishing the purpose for which the lawyer, physician, or psychotherapist was consulted.

Evidence Code section 912, subdivision (d) provides: "A disclosure in confidence of a communication that is protected by a privilege provided by . . . 1014 (psychotherapist-patient privilege) . . . , when such disclosure is reasonably necessary for the accomplishment of the purpose for which the . . . psychotherapist . . . was consulted, is not a waiver of the privilege."

Thus, we conclude that the communication with other participants in group therapy is reasonably necessary for the accomplishment of the purpose for which the psychotherapist was consulted and, therefore, comes within the privilege.

■ However, there are circumstances where the psychotherapist-patient privilege must yield to a criminal defendant's right to confrontation and cross-examination. (*People* v. *Reber* (1986) 177 Cal.App.3d 523, 530 [223 Cal.Rptr. 139].) ■ " 'The capacity of a witness to observe, recollect and narrate an occurrence is a proper subject of inquiry on cross-examination. If as a result of a mental condition such capacity has been substantially diminished, evidence of that condition before, at and after the occurrence . . . is ordinarily admissible for use by the trier in passing on the credibility of the

witness.' [Citations.]" (*Ibid.*) In *Reber,* the Third District Court of Appeal concluded that adherence to a statutory privilege of confidentiality must give way to pretrial access when defendants have established good cause and when upholding the privilege would deprive the defendant of the constitutional right of confrontation and cross-examination. (*Id.* at p. 531.) The privilege may be overridden only if and to the extent necessary to insure the defendant's constitutional rights of confrontation. (*Id.* at p. 532.)

■ Denial of cross-examination concerning events which were part of the actual criminal transaction itself denies the defense a substantial right. (*People* v. *Stone* (1983) 139 Cal.App.3d 216, 222 [188 Cal.Rptr. 493].) By contrast, a trial judge or a magistrate conducting a preliminary hearing is within his discretion in denying cross-examination of a prosecution witness as to matters not relating to the criminal event itself and which only affect the weight of the direct testimony. (*Ibid.*) ■ In the instant case, the identification of persons in C.'s group counseling could only have been relevant in a subsequent attempt to impeach her testimony. Thus, the excluded evidence could only have been relevant, if at all, to the ultimate weight of the direct evidence. ■ "Exclusion of cross-examination which 'only go[es] to the weight of the direct evidence' does not deny the defendant a fair hearing. [Citations.]" (*Id.* at p. 224.) ■ Moreover, defense counsel failed to establish good cause justifying the discovery of the sought-after, privileged information. Indeed, counsel indicated he did not intend to pursue the questioning once he had the names of the persons she had spoken to regarding the alleged atrocities admitted against her. Defense counsel represented to the court that he had "no idea" as to whether he would subpena any of the people whose identity might be revealed. Therefore, good cause was not shown for overriding the psychotherapist-patient privilege in the instant case. (*People* v. *Reber, supra,* 177 Cal.App.3d 523, 532.)

The petition is denied.

Stone (W. A.), J., and Brown (G. A.), J.,* concurred.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.