Filed 6/26/13  P. v. Cowan CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C066033 |
| Plaintiff and Respondent, | (Super. Ct. No. 09F09112) |
| v. | |
| ROBERT LINDSAY COWAN, | |
| Defendant and Appellant. | |

A jury found defendant Robert Lindsay Cowan guilty of five counts of lewd and lascivious acts involving two children under 14 years old.  (Pen. Code, §§ 288, subd. (a), 667.61, former subd. (e)(5).)[1]  During the pretrial phase, defendant unsuccessfully moved for third party discovery, seeking records regarding the victims' paternal grandfather's

---

[1] Undesignated statutory references are to the Penal Code.

1

(hereafter grandfather) section 288 conviction from 2003.[2]  Defendant argued that due to the victims' parents' experiences with sexual molestation, the parents may have been overly wary of sexual contact, thereby instilling in their children a hypersensitivity to sexual contact.  This, combined with the victims' sheltered upbringing, may have caused the victims to misinterpret innocuous contact.

Sentenced to 30 years to life, defendant appeals.  Defendant contends the pretrial court (Judge Ernest W. Sawtelle) erroneously denied the motion for third party discovery (after reviewing the relevant records in camera), thereby violating defendant's due process rights, right to a fair trial, and ability to fully and effectively cross-examine witnesses.  Defendant further contends that the trial court (Judge Delbert W. Oros) compounded this error by refusing to re-review these records.  However, we find no error because the records sought would not have led to the discovery of evidence, and defense counsel had the opportunity to fully and effectively cross-examine the witnesses.  Additionally, we have reviewed the records sought and agree with the pretrial court that they contain no discoverable information.  Therefore, we shall affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

On October 22, 2009, defendant went to the victims' family home to lead a Bible study, as he had done most Thursday evenings over the past four years.  Defendant touched then 10-year-old K.G. beneath her underwear, twice in her "front girl parts" (vaginal area) and once near her bottom.  The same night, K.G.'s then seven-year-old sister R.G. was sitting on defendant's lap when he put his hand beneath her underwear, moving his hand up and down on her bottom.  K.G. told her mother, Stephanie G.; her

---

[2]  There was never any allegation that the victims' grandfather committed any offense against them.  Furthermore, "there's no offer of proof from either party that [grandfather] is linked to the molest charged in the current case—there is no third party culpability argument being presented."

father, Patrick G.; and her sister, R.G., about defendant's touching. R.G. subsequently told her parents about the touching, as well as similar touching by defendant when R.G. was four and five years old. Defendant was charged with nine counts of lewd and lascivious acts with a child under 14 years old. (§ 288, subd. (a); four counts involving K.G., five counts involving R.G.)

Defendant was held to answer on all nine counts following a preliminary hearing in early March 2010 (Judge David I. Brown). During the pretrial phase (Judge Sawtelle), defendant sought third party discovery, requesting records relating to the girls' grandfather's section 288 conviction from 2003. Defendant's motion referenced specific pages from the preliminary hearing transcript and included an offer of proof . K.G. knew that her grandfather had "touched a little girl's parts" and "went to jail" for it, which is how she understood that defendant's touching her was wrong. Also, Stephanie G. had been molested as a child. Defense counsel argued that due to these life experiences, Patrick G. and Stephanie G. may have been especially wary of sexual contact and may have instilled in their daughters a hypersensitivity to any contact. For example, both parents repeatedly warned K.G. and R.G. not to let anyone touch their "girl parts." In support of his pretrial motion for third party discovery, defense counsel argued, "It may be, for example, that one of the complaining witnesses—if not both—have misinterpreted a benign or innocent touch by [defendant] due to what their father had told them to be wary of." Furthermore, defense counsel "ask[ed] the Court to review the materials and release materials that are appropriate for me to know in order to intelligently prepare for cross-examination of the girls' father that they will assist me in questioning him in trying to ascertain whether he has told his daughters anything about" their grandfather's case.

Specifically, defendant sought discovery of (1) the district attorney's file relating to grandfather's prosecution; (2) sheriff's department records relating to grandfather's investigation and prosecution; and (3) superior court records from grandfather's case.

3

The pretrial court (Judge Sawtelle) denied defendant's motion as to the district attorney's file and the court records. The pretrial court then performed an in camera review of the sheriff's department records, and found nothing discoverable therein.

Subsequently, defense counsel asked the trial court (Judge Oros) to re-review the sheriff's department records, arguing that the pretrial court's decision was "not binding on" the trial court. The trial court was not persuaded, and declined "to disturb Judge Sawtelle's decision" to deny the motion. However, the trial court explicitly stated that defense counsel could cross-examine the parents and both victims about the victims' knowledge of specifics relating to their mother's molestation and their grandfather's molest history. That is, "If the children were affirmatively told by either or both of their parents of the specifics of their mother's prior history or their grandfather's prior history, that is fair game because it goes to the issue of the children's knowledge of the nature of these alleged touchings, and it may go to the defense theory that there was a supersensitive environment in which the children were raised, and they are misinterpreting the nature of the conduct that's alleged against the defendant."

At trial, defense counsel had the opportunity to cross-examine the witnesses and presented the theory that the children lived in "an overly cautious, extremely isolating environment which resulted in oversensitivity to otherwise innocuous acts." A jury found defendant guilty of five counts of lewd and lascivious acts with a child under 14 years (§ 288, subd. (a); four counts involving K.G. and one count involving R.G.), and the trial court sentenced defendant to 15 years to life in state prison for each count (see § 667.61, former subd. (e)(5), multiple victims), with counts one and five to run consecutively and counts two, three, and four to run concurrently.

## DISCUSSION

Defendant's argument on appeal is two-fold.

First, defendant contends that the pretrial court's (Judge Sawtelle) in camera review of the sheriff's department records was inappropriately limited, as "[t]he court appeared to be reviewing these documents for anything that may relate to [defendant] or be 'exculpatory' to [defendant]." As such, defendant asserts that the pretrial court's denial of his motion for third party discovery violated his constitutional right to "a fair trial[ and] due process of law" by failing to disclose information "that might lead to the discovery of evidence."

Second, defendant argues "[t]he trial court compounded the earlier error by refusing to review [grandfather's prior court] records," thereby infringing on defendant's "ability to conduct effective cross-examination" as he could not "challenge or test the veracity of [K.G.'s and R.G.'s] statement[s]" on cross-examination, "render[ing] th[is] questioning meaningless." As such, defendant argues reversal is required. We disagree.

Discovery in a criminal case is governed by section 1054 et seq. (§§ 1054-1054.10.)[3] Denial of a discovery motion is subject to abuse of discretion review.

---

[3] Despite defendant's contentions at trial and again in the briefing, a subpoena duces tecum was an inappropriate avenue for the records sought. "No order requiring discovery shall be made in criminal cases except as provided in this chapter. This chapter shall be the only means by which the defendant may compel the disclosure or production of information from prosecuting attorneys, law enforcement agencies which investigated or prepared the case against the defendant, or any other persons or agencies which the prosecuting attorney or investigating agency may have employed to assist them in performing their duties." (§ 1054.5, subd. (a).)

Furthermore, we note that defendant, in support of his subpoena duces tecum argument, relies on dicta in *Alford v. Superior Court* (2003) 29 Cal.4th 1033. The *Alford* court stated, "The *Pitchess* procedure is . . . in essence a special instance of third party discovery. Another such procedure . . . in a criminal case [is] to serve a subpoena duces tecum requiring the person or entity in possession of the materials sought to produce the information in court for the party's inspection." (*Id.* at p. 1045.) Defendant notes that,

(*People v. Superior Court* (*Meraz*) (2008) 163 Cal.App.4th 28, 46 (*Meraz*).) As such, the decision will be upheld unless we find (1) " 'the [trial] court exceed[ed] the bounds of reason,' " and (2) the defendant suffered substantial prejudice to justify reversal. (*Id.* at pp. 46, 49.) We find that the pretrial court was well within the bounds of reason in denying defendant's motion, and moreover, defendant suffered no prejudice. Therefore, the pretrial court and the trial court did not abuse their discretion.

### I. The Pretrial Court's In Camera Review Was Proper and Did Not Violate Defendant's Constitutional Rights

#### A. *The Pretrial Court Did Not Inappropriately Limit Its Review*

Defendant asserts that the pretrial court's in camera review of the sheriff's department records was too limited. Specifically, defendant asserts that "it is clear" that the pretrial court "review[ed] the documents for anything that may relate to [defendant] or be 'exculpatory' to [defendant]. Although appropriate, it was far short of what the court should have been reviewing. The court was tasked with reviewing the documents for anything that may lead to the discovery of evidence."

In support of this argument, defendant directs us to the pretrial court's minute order denying the motion for third party discovery: "After in camera review of the Sacramento County Sheriff's [Department] records the Court found no relevant information regarding the prosecution of [defendant] therefore the motion to release records is denied." We do not interpret this statement to indicate that the pretrial court reviewed the records only for exculpatory evidence. Rather, we find "relevan[ce]" to be the crux of this statement, and such an inquiry is not inappropriately limited.

---

pursuant to *Alford*, he need not present theories of relevance to the prosecution. However, in so relying, defendant fails to recognize that relevance is still part of the trial court's analysis in granting or denying a motion for third party discovery. (*Alford*, at pp. 1045-1046 [providing that defendant need not present a relevance argument to the prosecution, "but instead may make an offer of proof"].)

6

Defendant further points to the following statement the pretrial court made to the prosecutor in the third party discovery context:  "So mostly at this point it seems that the issue is whether or not there is exculpatory information, and that I guess I'm going to remind you of your *Brady* duties, and—and that you should review those for that purpose."[4]  Defendant avers that this statement shows that the pretrial court reviewed the documents simply for exculpatory information.  We disagree.  While the pretrial court's comments include the term "exculpatory information," this was in the context of reminding the prosecutor of her *Brady* obligations, not in discussing the court's own in camera review.  Therefore, referring to "exculpatory information" in this context does not support the contention of an inappropriately limited in camera review.  As there is nothing further in the record to support defendant's contention that the pretrial court's review was inappropriately limited, we will proceed under an abuse of discretion review.

### B.  The Records Sought Would Not Have Led to Discovery of Evidence

Relying on *People v. Reber* (1986) 177 Cal.App.3d 523, defendant contends that he was entitled to third party discovery because due process entitles a criminal defendant "to any ' "pretrial knowledge of any unprivileged evidence, or information *that might lead to the discovery of evidence*, if it appears reasonable that such knowledge will assist him in preparing his defense." ' "  (*Id.* at p. 531 [emphasis added in appellant's opening brief quoting *Reber*], overruled on other grounds in *People v. Hammon* (1997) 15 Cal.4th 1117, 1123.)  Defendant also emphasizes that "[o]ne of the legitimate goals of discovery is to obtain information ' "for possible use to impeach or cross-examine an adverse witness . . . ." ' [Citation.]  ' "[A]bsent some governmental requirement that information be kept confidential . . . the state has no interest in denying the accused access to all evidence that can throw light on issues in the case, and in particular it has no interest in convicting on the testimony of witnesses who have not been as rigorously cross-

---

**4** *Brady v. Maryland* (1963) 373 U.S. 83 [10 L.Ed.2d 215].

examined and as thoroughly impeached as the evidence permits." ' " (*Reber*, *supra*, 177 Cal.app.3d at p. 531.)

While these principles apply to criminal discovery motions, the records sought regarding grandfather's case could not have reasonably led "to the discovery of evidence" or "throw[n] light on issues in the case." Defendant contends otherwise. Defendant points out that K.G. testified at trial, as anticipated in the pretrial proceedings on this matter, that her father had told her grandfather touched a little girl's parts and went to jail for it; this was how K.G. knew defendant's actions were wrong. Defendant contends, "If the conduct alleged by [K.G.] was identical to that alleged against [grandfather], then the veracity of [K.G.'s] statement of what occurred by [defendant] is called into question." Therefore, according to defendant, "[t]he underlying facts of her grandfather's misconduct should have been disclosed so that the defense could determine whether or not this was an area for cross-examination and possible impeachment of [K.G.] and her parents," and failure to do so denied him the ability to discover evidence and effectively cross-examine K.G. and her parents.

Defendant's contention—that comparing the nature of grandfather's conduct from the 2003 case with the nature of the alleged conduct in the present case could, if sufficiently similar, shed light on the allegations and/or lead to the discovery of evidence—only has merit if the victims *knew* the nature of grandfather's conduct. However, there is nothing to indicate the victims did know the details of grandfather's case. Throughout the pretrial phase, defendant was unable to produce any evidence that the victims knew the nature of grandfather's conduct. And at trial, the witness testimony indicated that neither the victims nor Stephanie G. knew the nature of grandfather's conduct. What's more, there is no evidence R.G. knew anything about grandfather's conviction, much less the details of his case.

Nothing in the records of grandfather's case—records from a different case with a different perpetrator and a different victim who were not involved in the case before us—could have shed any light on K.G. and R.G.'s knowledge of grandfather's 2003 case. Therefore, these records are wholly irrelevant and could not have led to the discovery of evidence or shed any light on the issues in this case. Accordingly, denying defendant's motion for third party discovery did not "exceed[] the bounds of reason," and must therefore be upheld. (*Meraz*, *supra*, 163 Cal.App.4th at pp. 46, 49.)

### C. *Defendant Had the Opportunity to Effectively Cross-examine Witnesses*

Defendant continues to press the argument that by denying the third party discovery motion, the pretrial court "den[ied] [him] the ability to challenge or test the veracity of [K.G.'s and R.G.'s] statement[s], [which] renders the[ir] questioning on [cross-examination] meaningless." Defendant concedes he had the ability to cross-examine the witnesses, but argues that the inability to use records from grandfather's case to "test the veracity of [K.G.'s and R.G.'s] statement[s]" violated his Sixth Amendment right to confront these witnesses.

In support of this contention, defendant's argument follows a similar vein as the argument above; so too, then, does our discussion. Defendant posits, "If the conduct alleged by [K.G.] was identical to that alleged against [grandfather], then the veracity of [K.G.'s] statement of what occurred by [defendant] is called into question." Again, the People correctly point out that defendant's contention—that similarities between the facts of this case and those of grandfather's 2003 case may call into question "the veracity of [the victims'] statement[s]"—has merit only if the victims *knew* the nature of grandfather's conduct. For the same reasons provided above, the records sought could not have provided defendant with "the ability to challenge or test the veracity of [K.G.'s and R.G.'s] statement[s]," because the documents would be wholly irrelevant as to the victims' knowledge.

9

Moreover, contrary to his contentions, defendant at trial had the opportunity to, and did, fully and effectively cross-examine the witnesses to further his theory. Defendant presented his theory that "[K.G.] and [R.G.] were in such a sheltered environment that an innocuous touching was elevated to something nefarious based upon their hypersensitivity." Defendant cross-examined the witnesses to further this theory: He cross-examined K.G. and R.G. as to their knowledge of their grandfather's case; and he cross-examined Stephanie G. and Patrick G. as to what they had told their children about grandfather's conviction. And yet, there was never any evidence presented that the victims knew the details of the 2003 case.

Specifically, defendant put forth evidence that R.G. and K.G. lived a sheltered life: They were home-schooled; they were not allowed to have sleepovers; they had never been to a movie theatre; and they attended church three times per week, in addition to a nightly Bible study. Defendant put forth evidence that Patrick G. and Stephanie G. may have been overly wary of sexual contact: Stephanie G. had been molested as a child, Patrick G.'s father had been convicted of lewd and lascivious acts with a child under 14, and they had warned K.G. and R.G. many times not to let people touch their "girl parts"—"their chest[s]," "their bottom[s]," and "their vaginal areas." Defendant presented the theory that the children lived in "an overly cautious, extremely isolating environment which resulted in oversensitivity to otherwise innocuous acts." Furthermore, "[c]hildren this young are likely not able to process the difference between a good touch, an innocent touch, and a true molest, an innocuous blunder versus something that's truly bad." Therefore, contrary to defendant's assertion that his ability to cross-examine or impeach witnesses was thwarted by the pretrial court denying his motion for third party discovery, defendant had the opportunity to, and did, fully and effectively cross-examine the witnesses on the pertinent issue—whether R.G. and K.G. knew the details of grandfather's prior conviction.

10

## II. The Trial Court Did Not Compound Any Previous Error

Defendant additionally contends that when the trial court (Judge Oros) declined to re-review the records sought, "the trial court compounded the earlier error." In declining to re-review the records, Judge Oros relied on *In re Alberto* (2002) 102 Cal.App.4th 421, which provides that a judge may generally vacate his or her own order; however, "the power of one judge to vacate an order made by another judge is limited. [Citation.] This principle is founded on the inherent difference between a judge and a court and is designed to ensure the orderly administration of justice. 'If the rule were otherwise, it would be only a matter of days until we would have a rule of man rather than a rule of law.' " (*Id.* at p. 427.) Judge Oros stated, "[U]nder [*Alberto*] I am not going to disturb Judge Sawtelle's decision. I think it would be inappropriate to do so." We agree with Judge Oros and find that he acted within his discretion. Moreover, we note that there was no prior error to compound.

Finally, as defendant likens review in this case to a *Pitchess*[5] motion and the People have no objection to such a review, we have reviewed the sheriff's department records. We find the pretrial court (Judge Sawtelle) did not abuse its discretion in concluding that there was nothing discoverable therein. Therefore, even if the pretrial court had erred—which it did not—defendant would be unable to show prejudice requiring reversal.

The denial of defendant's third party discovery motion did not violate defendant's due process and confrontation rights. As such, the denial did not constitute an abuse of discretion.

---

[5] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (review of a police officer's personnel file regarding complaints).

11

**DISPOSITION**

The judgment is affirmed.

                                                 _____BUTZ_____, J.

We concur:

_____HULL_____, Acting P. J.

_____HOCH_____, J.