Filed 10/29/14  In re Natalie L. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re NATALIE L. et al., Persons Coming Under the Juvenile Court Law. | D065966 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, Plaintiff and Respondent, v. VALERIE L., Defendant and Appellant. | (Super. Ct. No. NJ14667A-B) |

APPEAL from orders of the Superior Court of San Diego County, Michael J. Imhoff, Commissioner.  Affirmed.

Marisa L. D. Conroy, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel and Lisa M. Maldonado, Deputy County Counsel, for Plaintiff and Respondent.

Valerie L. appeals orders of the juvenile court terminating her parental rights to her children, Natalie L. and Nathaniel L., under Welfare and Institutions Code section 366.26.  (All further statutory references are to this Code.)  She contends the juvenile

court prejudicially erred in finding the Indian Child Welfare Act (ICWA or the Act) inapplicable and terminating her parental rights before first giving notice under the Act. We disagree and affirm the orders.

## FACTUAL AND PROCEDURAL BACKGROUND

After receiving several referrals for the family, the San Diego County Health & Human Services Agency (the Agency) set up a preventive services plan in January 2012 for Valerie, who agreed to keep the children away from any verbal or physical altercations. Despite these efforts and although Valerie was counseled about the effects of domestic violence on young children, she continued to engage in verbal and physical altercations with her father, her girlfriend and others in front of the children.

In June 2012, Valerie refused a voluntary services plan and the Agency filed dependency petitions on behalf of Natalie and Nathaniel, alleging that the children were at substantial risk of serious physical harm based on their repeated exposure to domestic violence. The court ordered the children detained at the Polinsky Children's Center and reunification services for Valerie. The Agency placed the children with their maternal grandfather the following month.

Valerie told the Agency that the children did not have any Native American heritage and thus the Agency believed ICWA was inapplicable. However, at the August 2012 adjudication and disposition hearing, the children's father, Luis D., indicated that his parents or grandparents had told him he had some Navajo ancestry.[1] Based on contrary reports to the social worker from the paternal grandmother, the court indicated that it would review the issue again at the continued hearing.

---

[1] Luis also questioned paternity of the children, although it was later confirmed that he was their biological father.

Both Valerie and Luis later indicated on parentage inquiry forms that the children might have Indian ancestry through Luis's family. At the continued hearing in September 2012 Luis said that one set of his grandparents had told him they were members of the Navajo tribe, although he had only met them once and did not know their names. The Agency reiterated the paternal grandmother's statement that neither she nor the paternal grandfather had Native American ancestors. The court inquired of Luis, who was unable to provide any additional information, and all parties submitted on the matter. Noting that Luis's belief had been discredited by his mother's statements, the court found by clear and convincing evidence that ICWA did not apply.

At the disposition hearing in October 2012 all parties submitted on the Agency's recommendation to continue the children's placement with their maternal grandfather, with the social worker having discretion to allow Valerie overnight or extended trial visits. Because Luis was incarcerated at the George Bailey Detention Facility at that time, the court authorized reunification services for him upon his release. It also reaffirmed all of its earlier orders.

Valerie started participating in reunification services but did not complete any component of her case plan before being arrested in December 2012 for petty theft and passing bad checks, for which she was later sentenced to four years in prison. Based on both parents' lack of progress with their case plans by August 2013, the court terminated services and granted the Agency's request to set a section 366.26 permanency planning hearing.[2]

---

[2] As of the time of the August 2013 hearing, the Agency could not locate Luis; although the court continued the hearing, the Agency was unsuccessful in finding him despite substantial efforts.

3

The Agency recommended that the court terminate parental rights and place the children for adoption. At the March 2014 contested hearing, Valerie supported adoption as the permanent plan so long as her father was the adoptive parent, but preferred guardianship to adoption if the children were going to be placed with anyone else. The court found the children generally and specifically adoptable, terminated parental rights and, at the urging of Valerie, the Agency and the children, designated the maternal grandfather as the children's prospective adoptive parent. Valerie appeals.[3]

DISCUSSION

1.      *The Act*

ICWA provides in relevant part:

> "In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention. If the identity or location of the parent or Indian custodian and the tribe cannot be determined, such notice shall be given to the Secretary [of the Bureau of Indian Affairs] in like manner, who shall have fifteen days after receipt to provide the requisite notice to the parent or Indian custodian and the tribe. No foster placement or termination of parental rights proceeding shall be held until at least ten days after receipt of notice by the parent or Indian custodian and the tribe or the Secretary: *[p]rovided*, [t]hat the parent or Indian custodian or the tribe shall, upon request, be granted up to twenty additional days to prepare for such proceeding." (25 U.S.C. § 1912(a); see Welf. & Inst. Code, § 224.2, subd. (d).)

ICWA reflects a congressional determination that it is in the best interests of the child to retain tribal ties and cultural heritage and in the interest of the tribe to preserve its future

---

[3]      Given that the juvenile court placed the children with Valerie's father and identified him as the prospective adoptive father, exactly as she had requested, it is curious that Valerie would take an appeal from the juvenile court's order on ICWA grounds as a reversal could result in a completely different placement.

4

generations.  (*In re Desiree F.* (2000) 83 Cal.App.4th 460, 469; see also Welf. & Inst. Code, §§ 224, subd. (a)(2), 306.6.)  For purposes of the Act, an "Indian child" includes a child who is either:  (1) a member of an Indian tribe or (2) eligible for membership in an Indian tribe and the biological child of a member of an Indian tribe.  (25 U.S.C. § 1903, subd. (4); *In re Junious M.* (1983) 144 Cal.App.3d 786, 796; see Welf. & Inst. Code, § 224.1, subd. (a).)

2.      *Failure to Give Notice Under ICWA*

The notice requirements of ICWA are implemented through Welfare and Institutions Code section 224.2 and California Rules of Court, rule 5.481(b), the latter of which provides that after the filing of a ~~section~~ 300 petition, the Agency must send ICWA notice to the parent and Indian custodian of an Indian child, and the Indian child's tribe if "it is known or there is reason to know that an Indian child is involved in a [dependency] proceeding."  (See Welf. & Inst. Code, § 224.2, subd. (a); Guidelines for State Courts; Indian Child Custody Proceedings (44 Fed.Reg. 67584 et seq. (Nov. 26, 1979) (Guidelines)), p. 67586.)  Circumstances that may give the court or the Agency reason to believe that a child is an Indian child include a party's statement, or provision of information suggesting, that the child is an Indian child.  (Welf. & Inst. Code, § 224.3, subd. (b)(1); Cal. Rules of Court, rule 5.481(a)(5)(A).)

If the Agency knows or has reason to know that an Indian child is or may be involved in dependency proceedings, it must take various steps to determine whether the child has Native American ancestry, including (1) interviewing the parents, Indian custodian and "extended family members"; (2) contacting the Bureau of Indian Affairs and the California Department of Social Services for assistance in getting contact information for tribes in which the child may be a member or eligible for membership;

and (3) contacting the tribes and any other person who can reasonably be expected to have information regarding the child's membership status or eligibility. (Cal. Rules of Court, rule 5.481(a)(4)(A)-(C).)

A.     Forfeiture

The Agency argues that Valerie is precluded from asserting an ICWA challenge on appeal because she did not raise it on an appeal from the dispositional order. The courts of appeal have split on the issue of whether the doctrine of forfeiture applies to a parent's belated claim of ICWA violations. (*In re Pedro N.* (1995) 35 Cal.App.4th 183, 189-191 [holding a mother foreclosed from raising the issue of improper notice under ICWA on appeal from termination of her parental rights because she did not appeal from the dispositional order stating ICWA was inapplicable]; compare *In re Marinna J.* (2001) 90 Cal.App.4th 731, 739 [holding parents' ICWA violation claim cognizable on appeal although not raised until after parental rights were terminated].)

This court has previously held that the forfeiture doctrine is inapplicable in the context of ICWA notice. (*Dwayne P. v. Superior Court* (2002) 103 Cal.App.4th 247, 251.) Here, we may assume, without deciding, that notwithstanding the very belated nature of Valerie's objection, she has not forfeited her right to assert an ICWA violation because we conclude that (1) the juvenile court properly found ICWA inapplicable based on the conflicting evidence before it (see discussion, *post*) and (2) although the juvenile court had an "affirmative and continuing" duty to inquire about whether the children were or might have been Indian children (Welf. & Inst. Code, § 224.3, subd. (a); Cal. Rules of Court, rule 5.481(a), it was not required to revisit the issue, absent new and credible evidence of possible Native American ancestry. (See Welf. & Inst. Code, § 224.2, subd. (b); *In re Aaliyah G.* (2003) 109 Cal.App.4th 939, 942.)

6

B.      Sufficiency of the Evidence

Valerie contends that there was no substantial evidence to support the juvenile court's findings that ICWA was inapplicable.  We disagree.  Luis's statement that he had been told by a set of his grandparents, whom he could not name or otherwise identify, that he had Navajo heritage was at best vague and speculative.  (See *In re O.K.* (2003) 106 Cal.App.4th 152, 157 [holding that the paternal grandmother's statement that the children's father "may have Indian in him" but could not provide any additional information about the family history or tribal affiliation was too indefinite to give the court reason to believe the children were Indian children]; but see also *In re Damian C.* (2009) 178 Cal.App.4th 192, 199 [concluding that conflicting evidence as to whether the mother had Indian ancestry was sufficient to require ICWA notice to the identified tribes].)

Moreover, the record establishes that Luis suffered from schizophrenia and bipolar disorder, conditions that might have affected his perception and reporting of events.  (See generally *People v. Reber* (1986) 177 Cal.App.3d 523, 528-531 [recognizing that a schizophrenic may have a distorted ability to perceive and recall events or may have difficulty distinguishing fact from fantasy, thus affecting his or her credibility], overruled on other grounds by *People v. Hammon* (1997) 15 Cal.4th 1117, 1123-1128.)  By contrast, his mother gave a definitive and unqualified statement that Luis in fact had no Native American ancestry, from either her side of the family or his father's.  Factually, this case differs from *In re Damian C.*, *supra*, 178 Cal.App.4th at page 199, where the court held the Agency had a reason to know the dependent was an Indian child based on reports the mother indicated she might have Indian ancestry through her father, and her father stated he had heard conflicting reports on whether his father had been a member of

7

a Yaqui or Navajo tribe.  Here the father's statement was not only equivocal, his mother unequivocally stated there was no Native American ancestry.  In the absence of any indication in the record that Luis's mother was in any way an unreliable witness, the court could have reasonably concluded that Luis's statement was not credible and that ICWA was inapplicable to the proceedings.[4]

## DISPOSITION

The orders terminating parental rights to Natalie and Nathaniel are affirmed.

HALLER, J.

WE CONCUR:

NARES, Acting P. J.

AARON, J.

---

[4]     In this regard, we note that since the children were placed with Valerie's father from very early on in the proceedings and Luis's parents had not sought to have the children placed with them, Luis's mother had no obvious disincentive to report honestly on whether Luis (and thus the children) had Native American ancestry.