[No. B020929. Second Dist., Div. Six. May 24, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
RONALD F. PACK, Defendant and Appellant.

[Opinion certified for partial publication.*]

---

*Pursuant to rule 976.1 of the California Rules of Court, this opinion is certified for partial publication. The portions to be published follow.

680

682

COUNSEL

John D. O'Loughlin, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Richard L. Walker and Patrick T. Brooks, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

GILBERT, J.—Ronald F. Pack appeals his conviction by a jury of various counts which include rape, kidnapping, sodomy, oral copulation and assault

with a deadly weapon or by means of force likely to cause great bodily injury.

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .*

On appeal, Pack requests that this court review the mental health records of the complaining witness in order to ascertain whether the trial court erred in denying release of the records to him for purposes of impeachment. Pack also asserts as error the admission of statements in violation of his *Miranda* rights.

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .*

We affirm the conviction.

## DISCUSSION

### I. *Mental Health Records*

In response to a subpoena duces tecum from Pack, Ventura County Mental Health Services delivered to the trial court a sealed envelope containing the patient records of Shirley J., the victim and complaining witness. In deference to the confidential nature of the records (Welf. & Inst. Code, § 5328), the court examined them in camera to determine if they contained information relevant to the credibility, memory, and capacity of the witness, and whether such information should be released to the defendant for purposes of cross-examination and impeachment. (See *People* v. *Reber* (1986) 177 Cal.App.3d 523 [223 Cal.Rptr. 139].) The court, finding nothing in the records warranting disclosure, ruled that the privilege under Welfare and Institutions Code section 5328 applied and resealed the records.

Pack wishes us to review Shirley J.'s mental health records to determine whether the trial court's ruling was in error. Pack invokes his constitutional right to produce evidence on the issue of whether the witness's mental health problems affect her credibility, and asserts that this right overrides California's policies of evidentiary privilege and confidentiality.

---

* See footnote, *ante,* page 679.

The People urge that we not review the records because *Reber, supra,* is inapplicable and, in any event, the procedures for reviewing confidential records, as outlined in that case, were properly followed here.

The People argue that Pack has not shown a reasonable possibility that the evidence sought might have resulted in a different verdict. Pack argues his situation is "Kafkaesque" in that, because of the confidential nature of the records, he is unable to view them to ascertain if they are relevant. Without appellate review of the documents as a check on the trial court's discretion, the ruling becomes absolute and unreviewable.

### A.

Shirley J.'s mental health care records are privileged from compelled disclosure under two statutory schemes. Welfare and Institutions Code section 5328 provides that all information and records obtained by state or county public mental health care facilities, in the course of providing services, are confidential. The statute is a "general prohibition against disclosure of information, subject to defined exceptions." *In re S. W.* (1978) 79 Cal.App.3d 719, 721 [145 Cal.Rptr. 143].) Among these exceptions is subdivision (f), allowing disclosure "[t]o the courts, as necessary to the administration of justice. . . ." (*Ibid.*)

Disclosure pursuant to Welfare and Institutions Code 5328, subdivision (f) is in turn subject to an evidentiary limitation. Use of the records is prohibited by the psychotherapist-patient privilege (Evid. Code, § 1014) which operates independently of the Welfare and Institutions Code privilege. (*Boling v. Superior Court* (1980) 105 Cal.App.3d 430, 443 [164 Cal.Rptr. 432].) The psychotherapist-patient privilege (Evid. Code, § 1014) was not expressly considered by the trial judge in his review of Shirley J.'s records, and was not raised by either party at trial or here on appeal. The privilege may only be asserted by the patient, her authorized representative, or the psychotherapist. (Evid. Code, § 1014.) Evidence Code section 916 provides that the presiding officer of the court, "on his own motion or on the motion of any party, shall exclude information that is subject to a claim of privilege under this division if: [¶] (1) The person from whom the information is sought is not a person authorized to claim the privilege; and [¶] (2) There is no party to the proceeding who is a person authorized to claim the privilege."

Here the Ventura County Mental Health Service released the records to the court pursuant to Welfare and Institutions Code section 5328, subdivision (f), and did not assert the Evidence Code section 1014 privilege on behalf of the patient. Shirley J. is not a party to this criminal proceeding,

and there is nothing in the record indicating she waived the psychotherapist-patient privilege. (Evid. Code, § 912.) Nor do any exceptions to the privilege apply. (See Evid. Code, §§ 1016-1027.)

Under such circumstances, the trial court was statutorily required to assert the psychotherapist-patient privilege, on its own motion, on behalf of Shirley J. (Evid. Code, § 916; *Lemelle* v. *Superior Court* (1978) 77 Cal.App.3d 148, 158 [143 Cal.Rptr. 450].)

■ Subdivision (f) of Welfare and Institutions Code section 5328 authorizes disclosure of information in some pending judicial actions or proceedings "unless such evidence is otherwise undisclosable." (*Mavroudis* v. *Superior Court* (1980) 102 Cal.App.3d 594, 602 [162 Cal.Rptr. 724].) Subdivision (f) does not override the Evidence Code privilege, and records released pursuant to subdivision (f) are not subject to discovery unless the Evidence Code section 1014 privilege is waived. (*Ibid.*; *In re S. W., supra,* 79 Cal.App.3d at p. 722.)

## B.

■ *People* v. *Reber, supra,* 177 Cal.App.3d 523 sets forth the proposition that the psychotherapist-patient privilege must yield where the undisclosed information would deprive the defendant of the constitutional right to cross-examine adverse witnesses. The *Reber* court concluded that where good cause is shown by the moving party, the trial court should (1) obtain the privileged records and review them in camera; (2) weigh the constitutional right to cross-examine against the statutory privilege; (3) determine which if any of the privileged materials are essential to vindicate the defendant's constitutional right; and (4) create an adequate record for review. (*Id.* at p. 532.)

The trial court followed these procedures before it ruled that none of Shirley J.'s mental health care records should be released to Pack for use in cross-examination. We agree with the People that Pack did not make the good cause showing, which is a prerequisite to a *Reber* review of privileged documents.

■ A criminal defendant's motion for discovery must describe the requested information with reasonable specificity and must be sustained by plausible justification for production of the items requested. (*Lemelle* v. *Superior Court, supra,* 77 Cal.App.3d 148, 162.)

In *Pennsylvania* v. *Ritchie* (1987) 480 U.S. 39 [94 L.Ed.2d 40, 107 S.Ct. 989], the Supreme Court affirmed a *Reber*-type procedure providing for in

camera review of confidential child abuse records held by a state agency. (480 U.S. at pp. 58-59 [94 L.Ed.2d at p. 58].) The court noted however that the defendant could not require the trial court to examine the confidential records "without first establishing a basis for his claim that it contains material evidence." (*Ibid.* at fn. 15.)

The defendants in *Reber,* accused of sexual assault, were not required to allege with particularity the information sought in the witness's psychotherapy records but "were able to and did connect specific facts in issue with recorded instances when the female victim had hallucinated sexual attacks." (*People* v. *Reber, supra,* 177 Cal.App.3d at p. 532.) This established sufficiently good cause for the trial court to undertake its in camera review.

■ Here, no such specific facts were shown prior to the trial court's in camera review of Shirley J.'s records. At trial, Pack cross-examined Shirley J. and called an expert witness in an attempt to impeach her reliability as a witness. Pack tried to show Shirley J. to be unreliable because of her blood-alcohol level at the time of the incident, her periods of black-out, her inability to recall and place events in proper sequence, and her inconsistent testimony.

Pack argues that he has a constitutional right to produce evidence of Shirley J.'s mental health because of the showing he has made concerning her credibility. He contends that because Shirley J. "apparently received treatment for *some* mental health problem, the nature of which is unknown" to Pack, he is therefore entitled to judicial review of her mental health records to determine whether they contain information sufficiently probative to require disclosure.

We decline to review privileged psychotherapeutic records upon such a minimal showing. A person's credibility is not in question merely because he or she is receiving treatment for a mental health problem. To subject every witness in a criminal prosecution to an in camera review of their psychotherapist's records would be the invasion of privacy which the psychotherapist-patient privilege is intended to prevent. (*People* v. *Stritzinger* (1983) 34 Cal.3d 505, 511 [194 Cal.Rptr. 431, 668 P.2d 738]; *In re Lifschutz* (1970) 2 Cal.3d 415, 431-432 [85 Cal.Rptr. 829, 467 P.2d 557, 44 A.L.R.3d 1].)

That the privileged documents may contain relevant evidence is not a reason for disclosure. In considering the psychotherapist-patient privilege, the Legislature expressly recognized that it might result in the witholding of relevant information, but believed that the interests of society were better served by an assurance of confidentiality. (See Sen. Judiciary Com. com. to

Evid. Code, § 1014, West's Ann. Evid. Code (1966) pp. 621-622.) Many rules of evidence exclude otherwise admissible, relevant evidence. (*People* v. *Fleming* (1983) 140 Cal.App.3d 540, 544 [189 Cal.Rptr. 619].)

## II.  *Miranda  Violations*

■ Pack next contends that the trial court erred in admitting statements he made during police interrogation, after he invoked his right to counsel, in violation of *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

■ Whether a defendant asserted his Fifth Amendment privileges under *Miranda* is a question of fact which cannot be resolved by a per se rule but only by taking into account the special circumstances of each case. (*In re Brian W.* (1981) 125 Cal.App.3d 590, 599 [178 Cal.Rptr. 159].) ■ In order to determine whether statements obtained during custodial interrogation are admissible against the accused, the court must inquire into the totality of the circumstances to ascertain whether the accused knowingly and voluntarily decided to forego his right to remain silent and to have the assistance of counsel. (*Ibid.*; *Miranda* v. *Arizona, supra,* 384 U.S. at pp. 475-477 [16 L.Ed.2d at pp. 724-725].)

After Pack was arrested and booked by Ventura police, he was brought into an interrogation room by Officer Darryl Olsen. The officer informed Pack of the charges against him and read him his *Miranda* rights. Here is the memorable dialogue that followed:

"DO: Do you understand each of these rights I've explained to you?

"RP: What rights?

"DO: The rights that I have just read to you, Ron.

"RP: I don't know what you're talking about.

"DO: Okay, Ron, you're going to have to listen up a little bit here, I'll go ahead and read your rights to you again, okay?

"RP: I don't understand what you're trying to do to me, man.

"DO: Hey, what I want to do is talk to you about what may have happened, okay. Before I do, I need to advise you of your *Miranda* rights. Okay? And I'll go ahead and read them to you again. Okay, can you listen up a little bit here?

"RP: I'll try.

"DO: You'll try, okay. Listen up. [Reads *Miranda* rights] Do you understand each of these rights I've explained to you?

"RP: *I think you ought to have somebody protecting me right now because I ain't too, oh here man, I ain't* [*mumbles*].

"DO: Okay. Do you, okay, do you understand the rights I've explained to you?

"RP: What rights?

"DO: The rights I've just read to you Ron, do you understand those?

"RP: I don't understand what you're trying to say, brother. I just, it just comes out—just don't come out right, man. You know, its like its uh, your dragging, you know. Your sound ain't right man. You know, its part—

"DO: What do you mean, Ron?

"RP: Part of it, part of it, part of it's uh—like I can understand part of it and the rest of it, you know, some of it ain't right, you know. I—what the hell you saying man, you know.

"DO: Are you listening Ron?

"RP: I'm trying to listen man.

"DO: Okay, would you like me to go through them one more time?

"RP: I will try to.

"DO: You know what your rights are?

"RP: Do I know what my rights are? Buddy, I don't even know where my left foot is—

"DO: Okay. Ron, listen up.

"RP: Okay.

"DO: One more time. [Reads *Miranda* rights] Do you understand each of these rights I've explained to you? The ones I just, the ones that I just told you right now?

"RP: You mean that I got a right to have somebody here with me?

"DO: That's right.

"RP: Well, ain't you here?

"DO: Who would you like to be here?

"RP: [Mumbles]

"DO: Ron, do you understand the rights I've just explained to you?

"RP: I'm having trouble understanding anything right now, can I read it? I, I, I heard that *Miranda* somewhere before.

"DO: Would you like to read them, would that be better?

"RP: I can't see clear right now.

"DO: You can't see clear, okay. Why don't I just, here, having these rights in mind, do you wish to talk to me about the charges?

"RP: What am I giving up if I talk to you though? I give up what? My right to a fair trial, or what?

"DO: Okay, when you talk to—the rights that I've read to you—

"RP: I know you're all going to try to put me in jail for this and it's alot of bullshit too. I mean, goddamn, all I did was kick the bitch and slap her a couple of times, goddamn you say I, act like I turned around and did a bunch of freak shit to her, man, Jesus Christ.

"DO: Okay Ron, do you understand that you have the right to remain silent? You understand that?

"RP: I can shut up then?

"DO: Do you have—do you know

"RP: I don't think that, that you're going to be able to use anything on that tape cause I ain't coherent enough to understand what you're trying to read me buddy. Okay. I can understand parts of it and I understand—I'm having trouble functioning right now, alright, and it's, it's, I'm not trying to

okay. But uh, I don't, you say you read me my rights, I heard you read something, okay it's cool, okay, whatever. What do you want me to do?

"DO: This is Officer Olsen . . . I'm ending the interview at this time." (Italics added.)

A few minutes after Officer Olsen ended the interview, Corporal Morris spoke to Pack in order to determine whether he was faking confusion as to his *Miranda* rights. After speaking with Corporal Morris, Pack indicated his willingness to talk with the police. Pack was once again advised of his *Miranda* rights, waived them, and submitted to an interrogation.

■ Pack asserts that by saying to Officer Olsen "I think you ought to have somebody protecting me right now because I ain't too, oh here man, . . ." he asserted his right to counsel, and that all further attempts to advise him of his right or interrogate him should have ceased.

We agree that Pack's vague demand was a sufficient assertion of his right to counsel. ■ A defendant need not make an express statement to invoke his Fifth Amendment privileges. (*People* v. *Superior Court* (*Zolnay*) (1975) 15 Cal.3d 729, 736 [125 Cal.Rptr. 798, 542 P.2d 1390].) No particular form of words or conduct is necessary. " '[T]o demand that it [the privilege] be invoked with unmistakable clarity . . . would subvert *Miranda's* prophylactic intent.' " (*Ibid.,* quoting *People* v. *Randall* (1970) 1 Cal.3d 948, 955 [83 Cal.Rptr. 658, 464 P.2d 114].) ■ Once a defendant demonstrates that he does not want to waive his *Miranda* privileges, the police cannot lawfully subject him to a new round of interrogation, even if the *Miranda* warnings are repeated. (*People* v. *Pettingill* (1978) 21 Cal.3d 231, 238 [145 Cal.Rptr. 861, 578 P.2d 108].)

■ Here, however, the police were unable to ascertain whether Pack actually understood his *Miranda* rights. The transcript of the session with Officer Olsen (*ante,* at pp. 687-690) shows that Pack was either confused, feigning confusion as to his rights, or trying out a routine. Officer Olsen testified at the suppression hearing that during the interview he believed Pack did not understand his *Miranda* rights. Corporal Morris's questioning of Pack was intended merely to ascertain whether pack was confused or "faking it."

Under such circumstances the police were permitted to continue to query Pack as to his understanding of his rights. ■ "Clearly the authorities permit clarifying questions even after a suspect says he asserts his constitutional rights, . . . Nothing in *Miranda* precludes the police from clarifying with the suspect whether he understands the questions relating to his consti-

tutional rights and whether by his answers he intends to waive them. It is just as important for police to make certain a suspect means what he says in his answer which asserts his rights as it is to ascertain if he understands the questions sufficiently to knowingly and intelligently waive those rights." (*In re Brian W., supra,* 125 Cal.App.3d at pp. 599-600.)

■ Once Pack indicated his willingness to talk, he said he understood his *Miranda* rights and signed a waiver. Pack does not contend on appeal that this waiver was not knowingly and intelligently made. The statements subsequently made were properly admitted.

### III, IV

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .*

The judgment of conviction is affirmed.

Stone (S. J.), P. J., and Abbe, J., concurred.

---

* See footnote, *ante,* page 679.