858 P.2d 94

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Albert RAMOS, Defendant–Appellant.**

No. 13505.

Court of Appeals of New Mexico.

June 8, 1993.

Certiorari Denied July 20, 1993.

Tom Udall, Atty. Gen., Mary Catherine McCulloch, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Sammy J. Quintana, Chief Public Defender, Susan Roth, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

*OPINION*

ALARID, Judge.

Defendant appeals from his convictions for kidnapping and two counts of second degree criminal sexual penetration (hereinafter "CSP"). He raises several issues on appeal: (1) denial of his motion to produce the complaining witness's psychotherapy records; (2) refusal to admit portions of emergency room records; (3) double jeopardy bar on punishment for kidnapping as a separate offense and use of kidnapping as the underlying felony of CSP; (4) failure to instruct the jury on the definitions of sexual intercourse and anal intercourse; and (5) denial of his motion for new trial based on prosecutorial misconduct. Issues raised in the docketing statement but not briefed are deemed abandoned. *State v. Fish,* 102 N.M. 775, 701 P.2d 374 (Ct.App.), *cert. denied,* 102 N.M. 734, 700 P.2d 197 (1985). We affirm.

## FACTS

Defendant met the complaining witness (hereinafter "B.D.") in a bar. During the course of the evening they played pool, drank beer, and danced together at various locations. B.D. also claims they smoked marijuana cigarettes that night. Near closing time, B.D. and Defendant left the bar together. B.D. testified that after Defendant's truck left the bar parking lot, Defendant refused to take her home and no longer spoke to her. She asserts that when she started to object, Defendant grabbed her by the neck and hair, told her he was going to have sex with her, and drove to a secluded location in the desert.

B.D. testified that after Defendant parked his vehicle, he started removing her clothing, pulled her out of the cab by her hair, and placed her in the bed of his truck. She claims he held her by the throat and told her not to scream and, after removing the rest of her clothing, penetrated her vagina. Next, B.D. testified that when Defendant observed car headlights approaching, he threw B.D. on the ground and put dirt in her mouth so that she would not yell out. Once the approaching car passed,

B.D. testified that Defendant picked her up by the hair and throat and put her back in the bed of the truck and penetrated her anus. B.D. then claims that Defendant closed the tailgate and began to drive off while B.D. was naked in the bed of the truck. She claims that when Defendant stopped at a main road, she jumped out and demanded her clothes from inside the passenger compartment. B.D. testified that Defendant threw the clothes at her and drove off after telling her that she had better not tell anyone about what had happened.

Defendant offers a different version of the events of that night. Defendant testified that B.D. consented to the sexual acts. Defendant claims that after they had sex, B.D. told him that she had a sexually transmittable disease. Defendant then claims that he told B.D. that she should have told him earlier about the ailment. Defendant asserts that this statement enraged B.D. and that at this point she walked away from the truck, called Defendant names, and threw a rock at his vehicle. Next, Defendant testified that after failing to persuade B.D. to get back in his truck, he drove off and left her.

B.D. walked to a nearby house and called the police. The police took B.D. to a hospital where she was examined by Dr. Angela Gardner.

## DISCUSSION

Following trial before a jury, Defendant was convicted of two counts of criminal sexual penetration and one count of kidnapping contrary to NMSA 1978, Sections 30–9–11 (Cum.Supp.1992) and 30–4–1 (Repl.Pamp.1984). Defendant raises five issues on appeal which we consider separately.

### I. B.D.'s Psychological Report

During pretrial discovery, Defendant learned that B.D. responded to a question contained on the hospital's Suspected Rape Report form that she was sexually assaulted as a child by her father. Further, the questionnaire revealed that B.D. received psychotherapy treatment which ended three months prior to the alleged assault

by Defendant. Thereafter, Defendant filed pretrial motions to produce all psychological and psychiatric evaluations of B.D., to present evidence of B.D.'s past sexual conduct, and to require B.D. to submit to a psychological examination. The State acknowledged that B.D. received counseling at Southwest Counseling Center; however, B.D. invoked the psychotherapist-patient privilege to prevent disclosure of the information requested by Defendant. *See* SCRA 1986, 11–504 (Cum.Supp.1992).

After an evidentiary hearing concerning these motions, the trial court conducted an in camera review of B.D.'s psychotherapy records. After the in camera review, the trial court found that there was nothing in the records that justified their disclosure to Defendant. Thus, the trial court ordered that these materials not be disclosed and denied Defendant's remaining motions.

Defendant argues that the trial court erred in failing to compel disclosure of B.D.'s psychotherapy records because, as his appellate briefs state, "the victim's psychotherapy records may well contain evidence of psychotic or hallucinatory behavior relevant to credibility." Defendant offers no New Mexico authority in support of his proposition for direct review of the requested information. Instead, Defendant cites decisions originating in Pennsylvania and one from California to advance his position. However, we do not find the cases cited by Defendant dispositive of the issue presently before this Court.

■ At issue in the present case is a rule of privilege adopted by our Supreme Court pursuant to authority vested in it by the state constitution, *see Ammerman v. Hubbard Broadcasting, Inc.*, 89 N.M. 307, 551 P.2d 1354 (1976), *cert. denied*, 436 U.S. 906, 98 S.Ct. 2237, 56 L.Ed.2d 404 (1978), rather than a common-law privilege. To the extent that Defendant now argues that the New Mexico Constitution requires greater access to psychological records than that afforded by the United States Constitution, that claim was not made below. *See State v. Sutton*, 112 N.M. 449, 454, 816 P.2d 518, 523 (Ct.App.) (contention that New Mexico

Constitution provides greater Fourth Amendment rights than the United States Constitution was not preserved), *cert. denied*, 112 N.M. 308, 815 P.2d 161 (1991). Therefore, we decline to address that issue at this time.

■ However, we do not intend to suggest that trial courts in all instances are prohibited from allowing defense counsel to review the type of material at issue here, either in camera or otherwise, upon proper request. We have previously recognized that defense counsel is generally in a better position than the trial judge to make the determination of what may or may not be useful to the defense. *State v. Romero*, 87 N.M. 279, 282, 532 P.2d 208, 211 (Ct. App.1975). On the other hand, in view of the sensitive and personal nature of the material here sought, and the policy of this state to allow victims to keep their private affairs private, *see* NMSA 1978, Section 30–9–16 (Repl.Pamp.1984); *State v. Romero*, 94 N.M. 22, 26, 606 P.2d 1116, 1120 (Ct. App.1980) (hereinafter *"Romero"*), trial courts must exercise their discretion carefully to balance the legitimate interests of all concerned.

Defendant cites *People v. Reber*, 177 Cal. App.3d 523, 223 Cal.Rptr. 139 (1986), to suggest that his trial defense was actually prejudiced by the trial court's failure to create an adequate record for review of its order denying Defendant access to B.D.'s psychotherapy records. In *Reber*, the California court correctly noted that "there are circumstances where the psychotherapist-patient privilege must yield to a criminal defendant's right to confrontation and cross-examination." *Id.* 223 Cal.Rptr. at 144. As that court noted,

"The capacity of a witness to observe, recollect and narrate an occurrence is a proper subject of inquiry on cross-examination. If as a result of a mental condition such capacity has been substantially diminished, evidence of that condition before, at and after the occurrence ... is ordinarily admissible for use by the trier in passing on the credibility of the witness."

*Id.* at 144–45 (quoting *State v. Esposito*, 192 Conn. 166, 471 A.2d 949, 955 (1984), *cert. denied sub nom. Pierson v. Connecticut*, 489 U.S. 1016, 109 S.Ct. 1131, 103 L.Ed.2d 193 (1989)). The present appeal, however, is not one of those instances.

■ We have reviewed the records before the trial court judge and concur with his determination that there was no material that justified disclosure or that should be disclosed in light of Defendant's constitutional rights. We find absolutely nothing in those documents which suggests that B.D. suffered from mental disorganization affecting credibility or any other matter of import. *See also People v. Pack*, 201 Cal. App.3d 679, 248 Cal.Rptr. 240 (1988) (a person's credibility is not in question merely because he or she is receiving treatment for a mental health problem).

Defendant argues that in *Commonwealth v. Lloyd*, 523 Pa. 427, 567 A.2d 1357 (1989), the Pennsylvania Supreme Court found that the denial of access to a rape victim's psychotherapy records violated the defendant's right to confrontation and compulsory process. In *Lloyd*, the defendant sought to obtain the psychotherapy records of a six-year-old girl whom he allegedly had raped. The trial court denied his request. The Pennsylvania Supreme Court reversed, holding that the defendant's state constitutional rights to confrontation and compulsory process required that he be permitted to inspect the records.

However, the Pennsylvania Supreme Court later recognized in *Commonwealth v. Wilson*, 529 Pa. 268, 602 A.2d 1290 (Pa.), *cert. denied sub nom. Aultman v. Pennsylvania*, —— U.S. ——, 112 S.Ct. 2952, 119 L.Ed.2d 574 (1992), *"Lloyd* was concerned with a common law privilege which could not defeat a defendant's constitutional rights." *Id.* 602 A.2d at 1297. "Implicit in the distinction drawn by the *Lloyd* court is the recognition that the existence of a statutory privilege is an indication that the legislature acknowledges the significance of a particular interest and has chosen to protect that interest." *Id.* at 1297–98. Therefore, *Lloyd* does not assist Defendant in the present case because of the existence

of New Mexico's privilege against disclosure of communications between a patient and a psychotherapist. SCRA 11–504.

Defendant claims that *Pennsylvania v. Ritchie*, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987), supports his allegation that he should have access to B.D.'s psychotherapy records. The defendant in *Ritchie* was charged with various sexual offenses against his minor daughter. The defendant in that case sought access to a file in possession of a protective agency established by the State of Pennsylvania relating to the reported abuse. The trial court conducted a partial in camera review of the file in question. The Pennsylvania Supreme Court held that, by denying access to that file, the trial court had violated both the Confrontation and Compulsory Process Clauses of the Sixth Amendment.

However, a careful reading of *Ritchie* reveals that the United States Supreme Court held that the defendant in that case was entitled to have the trial court review the entire file in question in order "to determine whether it contains information that probably would have changed the outcome of his trial." *Id.* at 58, 107 S.Ct. at 1002. Moreover, the Supreme Court clarified that "[a]n *in camera* review by the trial court will serve Ritchie's interest without destroying the Commonwealth's need to protect the confidentiality of those involved in child-abuse investigations." *Id.* at 61, 107 S.Ct. at 1003. Therefore, in the present case, the trial court's in camera complete review of B.D.'s records satisfies *Ritchie*, and we disagree with Defendant's broad interpretation of the holding of this case.

Finally, Defendant cites *Romero*, a second degree CSP case involving the use of a knife, as support for access to B.D.'s records. *See* § 30–9–11(B)(5) (perpetrator armed with a deadly weapon). In that case, the defendant was allowed to introduce evidence, including reports of the complaining witness's treating psychologist, which tended to establish several facts bearing on her mental condition. Apparently, the complaining witness did not claim that any of this evidence was privileged,

and as a result, the question of the relevance of the psychologist's report, or the defendant's entitlement to the report, was not litigated. Therefore, we believe the present facts are clearly distinguishable, and we do not agree that *Romero* supports the claim that Defendant should have had access to these records in order to argue relevance.

We believe the trial court was in the best position to assess the probative value of the evidence as it relates to the particular case before it and to weigh that value against the interest in confidentiality of the records. *State v. Kelly*, 208 Conn. 365, 545 A.2d 1048, 1055 (1988). We hold that the trial court's ultimate ruling on Defendant's discovery motion was not an abuse of discretion. *Cf. State v. Ortega*, 112 N.M. 554, 572–73, 817 P.2d 1196, 1214–15 (1991) (statements made to psychologist at state correctional institution properly excluded from trial).

## II. Exclusion of Portions of the Emergency Room Records

As noted above, an entry on the hospital's Suspected Rape Report form included B.D.'s admission that she was sexually assaulted by her father as a child and that she had received psychotherapy treatment up to three months prior to the incident at issue in this case. The trial court excluded this portion of the completed form from introduction into evidence.

Defendant takes issue with the trial court's determination that the proffered evidence related to B.D.'s past sexual conduct. *See* § 30–9–16 (limitations on admissibility of evidence of victim's past sexual conduct). We are not persuaded by Defendant's argument on this point. Section 30–9–16 applies to "all forms of past sexual conduct." *State v. Montoya*, 91 N.M. 752, 753, 580 P.2d 973, 974 (Ct.App.), *cert. denied*, 91 N.M. 751, 580 P.2d 972 (1978). Defendant also argues that the only policy of the rape shield law is to prevent an inference that the victim must have consented because she had sex before, and that since the evidence was introduced

for another purpose, Section 30–9–16 does not apply. We disagree; the statute is also designed to minimize intrusive inquiry into a rape complainant's private life. *State v. Johnson,* 102 N.M. 110, 692 P.2d 35 (Ct. App.1984), *overruled on other grounds by Manlove v. Sullivan,* 108 N.M. 471, 775 P.2d 237 (1989).

Defendant cites several New Mexico cases dealing with admissibility of prior allegations of rape. These cases are not applicable because here it was the fact of prior sexual abuse, not the allegation, which Defendant sought to establish through the proffered evidence. *See, e.g., Manlove,* 108 N.M. at 475 n. 2, 775 P.2d at 241 n. 2; *State v. Scott,* 113 N.M. 525, 530, 828 P.2d 958, 963 (Ct.App.1991), *cert. quashed,* 113 N.M. 524, 828 P.2d 957 (1992).

Having determined that the report of childhood sexual abuse was part of B.D.'s prior sexual conduct, the trial court was required to determine its relevance and then balance its probative value against its prejudicial nature. *See Scott,* 113 N.M. at 527–28, 828 P.2d at 960–61. We agree with the trial court on this issue and fail to see how the fact that B.D. was sexually abused as a child by her father was probative of any material issue in this case. Moreover, Defendant has not explained how instances of childhood abuse would affect B.D.'s ability to comprehend, know, and correctly relate the truth about a recent experience. Therefore, we hold that the trial court did not abuse its discretion in excluding the evidence of childhood sexual abuse. *See State v. Valdez,* 83 N.M. 632, 637, 495 P.2d 1079, 1084 (Ct.App.) (exclusion of evidence is a matter within the discretion of the trial court), *aff'd,* 83 N.M. 720, 497 P.2d 231, *cert. denied,* 409 U.S. 1077, 93 S.Ct. 694, 34 L.Ed.2d 666 (1972); SCRA 11–402.

Defendant contends that the excluded evidence of mental problems and treatment was relevant to B.D.'s credibility and that the trial court's ruling deprived him of an opportunity to impeach her. Again, Defendant relies on *Romero* to argue that the trial court abused its discretion. However, since the issue of the relevance of facts bearing on the complaining witness's men-

tal condition in *Romero* was not litigated, that case does not support Defendant's claim that evidence of B.D.'s treatment history is relevant here. *Cf. Romero,* 94 N.M. at 32–33, 606 P.2d at 1126–27 (Sutin, J., concurring in part and dissenting in part) (doctor's report was not relevant evidence).

Defendant cites several out-of-state cases in which evidence of a witness's psychological history was erroneously denied admission at trial. All of the cases cited by Defendant are distinguishable from the facts before this Court. In *People v. Di Maso,* 100 Ill.App.3d 338, 55 Ill.Dec. 647, 426 N.E.2d 972 (1981), the defendant proffered evidence contained in medical records relating to the key eyewitness's habitual drug use, alcoholism, and resulting disorientation. The reviewing court noted that habitual drug use is a significant factor in evaluating credibility because it is generally probative of abilities to perceive and recall accurately. Evidence that the witness's alcoholism triggered blackouts plus evidence that he was drinking at the time of the events about which he testified was probative of his sensory capacity. In *Wagner v. Commonwealth,* 581 S.W.2d 352 (Ky.1979), *overruled on other grounds by Estep v. Commonwealth,* 663 S.W.2d 213 (Ky.1983), the complaining witness had been committed to a psychiatric hospital prior to the alleged rape for attempted suicide, severe depression, and drug use, and at the time of the trial she was under psychiatric care and was receiving shock treatments which affected her memory.

▮ In *Di Maso* and *Wagner* the evidence offered was clearly probative of the witnesses' credibility. That is not the case here. B.D.'s need for psychological assistance in dealing with a childhood trauma was not evidence casting doubt on her ability to recall or relate the incidents at issue. *See Pack,* 248 Cal.Rptr. at 243–44. Thus, we cannot say that the evidence of treatment was relevant. *See* SCRA 1986, 11–402 (evidence which is not relevant is not admissible).

### III. Kidnapping as Underlying Felony and as Separate Charge

Defendant argues that he was subjected to multiple punishments by virtue of the use of the kidnapping offense, raising CSP from a third degree to a second degree felony, *see* § 30–9–11(B)(4) (CSP in the commission of any other felony), as well as an independent felony. In *Swafford v. State*, 112 N.M. 3, 810 P.2d 1223 (1991), our Supreme Court established the two-part test for determining legislative intent to punish, the sole limitation on multiple punishments. The controlling question under the facts before us is whether the conduct underlying the offenses is unitary, i.e., whether the same conduct violates both statutes. This question depends to a large degree on the elements of the charged offenses and the facts presented at trial. "[S]imilar statutory provisions sharing certain elements may support separate convictions and punishments where examination of the facts presented at trial establish[es] that the jury reasonably could have inferred independent factual bases for the charged offenses." *Id.* at 14, 810 P.2d at 1234 (citing *State v. McGuire*, 110 N.M. 304, 309, 795 P.2d 996, 1001 (1990)).

B.D. testified that after Defendant completed the drive into the desert against her will, during which time Defendant restricted her movements, Defendant tried to remove B.D.'s clothes and told her that he was going to have sex with her. As in *McGuire*, the jury could have inferred from facts other than the CSP itself that Defendant intended to hold the victim against her will from the moment of the abduction. *See also Swafford*, 112 N.M. at 15–16, 810 P.2d at 1235–36 (conduct underlying offenses of assault with intent to commit rape and CSP was not unitary where victim was bound, struck, and threatened for a period of time prior to the sexual act). Since we cannot say that the conduct underlying the offenses is unitary, the double jeopardy clause does not prohibit multiple punishments in this case. *See id.*

### IV. Definitional Jury Instructions

The trial court did not instruct the jury on the definitions of the sexual acts which Defendant was charged with committing. Defendant's claim of reversible error is raised pursuant to *State v. Franklin*, 78 N.M. 127, 428 P.2d 982 (1967), and *State v. Boyer*, 103 N.M. 655, 712 P.2d 1 (Ct.App.1985). However, Defendant did not tender any definitional instructions or object to the trial court's failure to so instruct the jury. Therefore, as a result, Defendant failed to preserve this issue for our review. *See State v. Tarango*, 105 N.M. 592, 734 P.2d 1275 (Ct.App.) (failure to give a definitional instruction is not failure to instruct on an essential element; the issue must be preserved by tendering an instruction or objecting to the failure to give an instruction), *cert. denied*, 105 N.M. 521, 734 P.2d 761 (1987), *and overruled on other grounds by Zurla v. State*, 109 N.M. 640, 789 P.2d 588 (1990).

### V. Prosecutorial Misconduct

Defendant acknowledges that he did not object to two remarks made by the prosecutor during trial. Instead, Defendant argued prosecutorial misconduct in a motion for a new hearing. Generally, unless a prosecutor's remark constitutes fundamental error, review by an appellate court must be predicated upon a timely objection by a defendant. *State v. McGuire*, 110 N.M. 304, 313, 795 P.2d 996, 1005 (1990); *State v. Clark*, 108 N.M. 288, 296, 772 P.2d 322, 330 (1989). However, "where the trial court addresses an untimely motion on the merits, an appellate court may review the question presented." *State v. Diaz*, 100 N.M. 210, 212, 668 P.2d 326, 328 (Ct.App.1983) (citing *State v. Ramirez*, 92 N.M. 206, 585 P.2d 651 (Ct.App. 1978)).

The comments made by the prosecutor in question are:

> And is this an easy crime to charge? I have an ethical obligation as a prosecutor not to file just because any woman walks into my office and says, "I've been raped." I have an ethical obligation not to do that. I must base it on something,

and something that I as a prosecutor, one must have a good basis for filing charges. It is not the easiest charge to file. It may be the easiest allegation to make by a woman, but not to charge.

. . . .

Did he turn into a Dr. Jekyll and Mr. Hyde? You're damn right he did. He sure did. That's a rapist. A rapist doesn't politely rape you. He is not nice about it. He's not a, you know, kinda come on, come on, come on. A rapist becomes a sudden rapist, but they walk around everywhere in the community. I mean, sometimes have you ever heard of somebody and think God, like for example Mr. Kennedy, President Kennedy's nephew I think it was, and you think God, wow. It kind of shocks you, kind of surprises you. Sometimes you think of a neighbor or somebody that got into trouble and think God, you're kidding, he's such a nice person. That's what happens. You don't really know a person completely. And so this stuff about Dr. Jekyll and Mr. Hyde, that's exactly what a rapist does. He becomes suddenly violent.

■■■ The standard of review of the denial of a motion for new trial is abuse of discretion. *State v. Ferguson*, 111 N.M. 191, 803 P.2d 676 (Ct.App.), *cert. denied*, 111 N.M. 144, 802 P.2d 1290 (1990). We will not disturb the trial court's denial of Defendant's motion for a new trial unless the ruling is arbitrary, capricious, or beyond reason. *State v. Smith*, 92 N.M. 533, 591 P.2d 664 (1979). The process of our review is as follows: first we determine whether there was legal error; and then we consider whether the error was substantial enough to warrant the exercise of the trial court's discretion. *Ferguson*, 111 N.M. at 192, 803 P.2d at 677; *State v. Gonzales*, 105 N.M. 238, 731 P.2d 381 (Ct. App.1986), *cert. quashed*, 105 N.M. 211, 730 P.2d 1193 (1987). Here, while we can agree that the prosecutor's remarks were improper, we cannot say that the trial court was required to find that they denied Defendant a fair trial.

## A. Comment Concerning the Basis For a Charge of Rape

■■■ As for the first comment, we note that Defendant argued at closing that it is easy to bring a charge of rape because all that is needed is an allegation and evidence of intercourse. The prosecutor responded with the comment noted above that she has an ethical obligation to have some basis, other than just a woman's allegation, to file charges. The trial judge agreed with Defendant that the prosecutor's comment was an expression of the prosecutor's personal opinion. *See State v. Vallejos*, 86 N.M. 39, 519 P.2d 135 (Ct.App.1974) (expression of personal opinion of defendant's guilt is impermissible). While we believe that the topic of the prosecutor's comment was invited, we cannot say that the trial court's determination was incorrect. *See Ferguson*, 111 N.M. at 195, 803 P.2d at 681 (trial court in best position to determine this question).

## B. Reference to William Kennedy Smith

Next, during closing argument, Defendant challenged the State's theory of the case by arguing that it was unreasonable to believe that Defendant "turned into a different person" after they had a good time together during the course of the evening. The prosecutor responded that Defendant did suddenly become violent and that such sudden behavior is typical of a rapist. In addition, the prosecutor argued that it was also a shock and a surprise to hear that a person like President Kennedy's nephew was involved in a rape case.

Defendant contends that the prosecutor's remark was improper because it compared him to a famous "wrongdoer." To the extent that the State argues that the topic of the response was invited, we agree. The harder question is whether the manner of the State's response was proper. The State argues that the prosecutor did not draw a direct link between Defendant and a specific rapist, rather that the comment referred to the sometimes shocking or surprising nature of the crime of rape.

We note that the trial court did not expressly rule on the question of whether this comment of the prosecutor was error. However, we assume for the purposes of this review that the trial court could have resolved this question in Defendant's favor. *See, e.g., Gonzales,* 105 N.M. at 240, 731 P.2d at 383 (improper reference to bad acts of President of United States in response to politician's claim that he would not have raped anybody because he had too much to lose). Therefore, it is not necessary for us to determine whether this particular comment was error and we turn to the dispositive inquiry.

### C. Prejudice

Following from the proposition that the two comments were error, was the trial court required to find that the impact of both errors was substantial and denied Defendant a fair trial? *See Ferguson,* 111 N.M. at 192, 803 P.2d at 678 (standard of review); *see also Vallejos,* 86 N.M. at 43, 519 P.2d at 139 (effect of cumulative impact of three items of misconduct considered). The trial court is in the best position to evaluate any possible prejudice, and the defendant has the burden of demonstrating an abuse of discretion. *See Gonzales,* 105 N.M. at 243, 731 P.2d at 386.

In support of the State, there is the fact that the topic of the two comments was invited by defense counsel's closing argument and the fact that Defendant did not request a timely cure. *See id.* In addition, the comments were brief and made only once. *Cf. State v. Cummings,* 57 N.M. 36, 253 P.2d 321 (1953) (improper remarks repeated three times); *State v. Henderson,* 100 N.M. 519, 673 P.2d 144 (Ct.App.1983) (improper comments were "lengthy").

Defendant argues that this case, like *Gonzales,* was a swearing match between himself and the complaining witness. In *Gonzales* the physical evidence supporting the complaining witness's version of events was that a clasp on her slacks was bent at an angle, she had an abrasion on her thumb, and she had some vaginal trauma consistent with forced sexual intercourse. However, the bent clasp testimony depend-ed on the complaining witness's credibility, and the doctor who testified to the trauma was impeached with his inconsistent testimony from an earlier trial.

Here, Dr. Gardner, the emergency room physician who examined B.D. on the night of the incident, testified that B.D. had recent abrasions and bruises on her forearms, elbows, and knees, plus superficial scratches on her back. In addition, Dr. Gardner testified that B.D.'s hair was disheveled and twisted and that she had dirt on her face. Dr. Gardner also testified that B.D. had a laceration along the edge of her rectum that was consistent with forced intercourse. Therefore, we believe that this testimony is of a sufficiently inculpatory quality to distinguish this case from *Gonzales.*

In support of Defendant, there is only the fact that the comments were improper. *See Gonzales,* 105 N.M. at 243, 731 P.2d at 386. Thus, we cannot say as a matter of law that the trial court's denial of the motion for new trial was a clear and manifest abuse of discretion. *See id.*

### CONCLUSION

We affirm Defendant's convictions for kidnapping and two counts of second degree criminal sexual penetration.

**IT IS SO ORDERED.**

MINZNER, C.J., and PICKARD, J., concur.