Filed 9/19/25  Sandoval v. Superior Court CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| RICHARD ALAN SANDOVAL, <br><br> Petitioner, <br><br> v. <br><br> THE SUPERIOR COURT OF STANISLAUS COUNTY, <br><br> Respondent; <br><br> THE PEOPLE OF THE STATE OF CALIFORNIA, <br><br> Real Party in Interest. | F088123 <br><br> (Super. Ct. No. CR-22-006915) <br><br><br> **OPINION** |

ORIGINAL PROCEEDINGS; petition for writ of mandate.  Valli K. Israels, Judge.

Law Offices of Marsanne Weese, Marsanne Weese and Rose Mishaan, for Petitioner.

No appearance for Respondent.

Rob Bonta, Attorney General, Kimberley A. Donohue, Senior Assistant Attorney General, Ian Whitney, Heather Gimle, and William K. Kim, Deputy Attorneys General, for Real Party in Interest.

-ooOoo-

On July 18, 2022, petitioner Richard Alan Sandoval was a passenger in a car he owned, which was being driven by his codefendant, Usman Mohammad Sikandar.[1] A law enforcement officer stopped the vehicle because he believed the windows were illegally tinted. After pulling the vehicle over, the officer smelled an "overwhelming odor of marijuana," which led him to believe that the amount of marijuana in the vehicle was over the legal limit. Based on this and other circumstances, the officer searched the vehicle. The officer found approximately four pounds of marijuana, a firearm, and cash. Sandoval filed a motion to suppress the evidence obtained during the search, which was denied. He subsequently filed a motion to dismiss the information, which was also denied.

Sandoval asks us to issue a writ of mandate or prohibition vacating the superior court's order denying his motion to dismiss and directing the court to dismiss the information against him. He argues that the court erred by denying his motion to dismiss the information because: 1) the detaining officer did not have reasonable suspicion to detain him; 2) the court relied on the detaining officer's testimony regarding the odor of marijuana, which was not reliable; 3) the detaining officer did not have probable cause to search his vehicle; and 4) he was denied the right to effectively cross-examine the detaining officer at the preliminary hearing. We deny the petition.

## PROCEDURAL HISTORY

The preliminary hearing was held on November 30, 2023, January 26, 2024, and February 2, 2024. Sandoval and Sikandar's motion to suppress[2] was heard concurrently with the preliminary hearing. Ultimately, the motion was denied and Sandoval was held to answer.

---

[1] We note that, in the record, Sikandar is sometimes referred to as "Sikander."

[2] The motion to suppress is not part of the record before us.

On February 16, 2024, the District Attorney of Stanislaus County filed an information charging Sandoval with possession of a firearm by a felon (Pen. Code,[3] § 29800, subd. (a)(1); count 1); possession of ammunition by a person prohibited from possessing a firearm (§ 30305, subd. (a)(1); count 2); and misdemeanor possession of marijuana for sale (Health & Saf. Code, § 11359, subd. (b); count 4).[4]

On or about April 16, 2024, Sandoval filed a motion to dismiss the information pursuant to section 995 and on non-statutory grounds, arguing that the magistrate erred by denying his motion to suppress and that the information should be dismissed. The prosecutor opposed the motion. On May 16, 2024, the superior court held a hearing on the motion and denied it.

On June 3, 2024, Sandoval filed a petition for a writ of mandate or prohibition. On March 6, 2025, our court summarily denied the petition. On or about March 16, 2025, Sandoval filed a petition for review with our Supreme Court. On April 30, 2025, our Supreme Court granted the petition for review and transferred the matter back to this court "with directions to vacate its order denying mandate and to issue an order directing the respondent superior court to show cause why the relief sought in the petition should not be granted." Accordingly, our court vacated the order denying the writ petition and issued an order directing the Stanislaus County Superior Court to show cause as to why the relief sought in the petition should not be granted. The People—the real party in interest—filed a return on June 9, 2025, and Sandoval filed a traverse on July 8, 2025.[5]

---

[3] Undesignated statutory references are to the Penal Code.

[4] Count 3 was a charge against Sikandar only.

[5] Sikandar also filed a petition for a writ of mandate or prohibition. However, we denied that petition in *Sikandar v. Superior Court* (Mar. 6, 2025, F088327) [nonpub. order], and Sikandar did not file a petition for review.

**FACTUAL BACKGROUND**

I.    **Sergeant Jose Meza's Testimony at the Preliminary Hearing Regarding his Experience, Education, and Training**

Jose Meza, a sergeant who had worked for the Modesto Police Department for approximately 10 years, testified at the preliminary hearing. Meza was the supervisor of the Crime Reduction Team, which went into high crime areas and did "crime suppression through traffic enforcement."[6] He participated in over 500 drug investigations, at least 200 of which involved marijuana. Since 2016, he had testified as an expert on possession of marijuana for sale approximately five times.

Meza received formal and informal training regarding the sale of marijuana, including through the police academy and the California Narcotics Officers' Association (CNOA). During a CNOA conference, he received training on identifying different quantities of marijuana. And "during the discussion portions [of the conference,] they talked about the odors and the over-omitting odors[.]" He also received informal training at a marijuana dispensary, where they brought out different strains and quantities of marijuana. This training provided him a point of reference for the smell of different quantities and different strains. Additionally, he had encounters with both marijuana users and marijuana dealers. During these encounters, he encountered both small amounts of marijuana and large amounts of marijuana. This also gave him reference points for the smell of different quantities of marijuana, including legal quantities and illegal quantities.

Based on his training and experience, Meza was able to tell the difference between a small amount of marijuana and a large amount of marijuana by smell. However, he could not determine the exact quantity of marijuana by smell alone. Additionally, to a

---

[6] Meza later testified the team did "[c]rime suppression through proactivity."

certain extent, strains have stronger or weaker odors, and he could not differentiate between strains of marijuana by smell alone.

## II. Sergeant Meza's Testimony at the Preliminary Hearing Regarding the Stop and the Search

On July 18, 2022, Meza was working enforcement in a high crime area in Modesto. He noticed a vehicle with tinted front windows. After seeing Meza, the occupants of the vehicle immediately lowered the windows and turned into a shopping center. They also avoided eye contact with Meza. This behavior caught Meza's attention. He positioned himself in an area where he could see the vehicle leaving the shopping center so that he could initiate a traffic stop after it left.

Meza did not see the vehicle leave the shopping center, but he did see it on the road. When the occupants saw Meza, they proceeded quickly through a solid yellow light and immediately lowered the windows again.

Meza initiated a traffic stop because he believed that the vehicle's window tinting violated Vehicle Code section 26708. When Meza was asked, "What about the window tint was it that you base[d] that traffic stop," he responded, "The amount of light that was transmitted through the windows." The windows were not "blacked out" or opaque, but they were tinted.

Sikandar was driving the vehicle, and Sandoval was in the front passenger seat. Meza approached the vehicle, advised the occupants of the reason for the stop, and asked them if they had any legal justification for the window tint. Meza was informed that Sikandar was not the registered owner of the vehicle. He found out that the registered owner was the passenger, Sandoval.

When Sikandar gave Meza a copy of his license, Meza noticed that it was an out-of-state license. This was relevant because Meza knew that the price of marijuana in Modesto was "much lower" than the price "across the United States," and because marijuana grown in California was particularly desirable. Meza had had multiple

interactions with people who came to Modesto from out of state intending to purchase large quantities of marijuana to resell in their state for three to five times the price.

Meza also noticed that both occupants "were very nervous." They were "breathing fast" and had a rapid heart rate. Additionally, they were avoiding eye contact and "their movements were very jerky." Meza could tell that they did not want to be contacted by law enforcement.

Finally, Meza also noticed the smell of marijuana. Initially, while the vehicle was running, there was "a light scent of marijuana." However, there were air fresheners on the vents inside the car,[7] and when Meza had the occupants turn off the vehicle, he smelled an "overwhelming odor of marijuana that … was very strong." Based on his training and experience, and based on what he smelled in the vehicle, he believed the amount of marijuana in Sandoval's vehicle was over the legal amount of one ounce.

Based on the circumstances, Meza believed there was an illegal quantity of marijuana in the vehicle, and he decided to search it. Meza found approximately four pounds of marijuana in the trunk, $29,800 in a duffel bag that was in the rear of the vehicle, and a loaded firearm in the center console that was accessible by both Sandoval and Sikandar. Additionally, Sikandar had approximately $200 in cash and two cellphones on his person, and Sandoval had $8,630 in cash and two cellphones on his person.

In addition to Meza's testimony, video footage from Meza's body-worn camera was introduced into evidence, as was a transcript of the audio from the footage.

### III. The Magistrate's Ruling

After hearing arguments from the parties, the magistrate ruled as follows:

---

[7] After video footage from Meza's body-worn camera was played, Meza testified that there were objects in the vents that he had believed were air fresheners, but he no longer believed they were.

"… I'm familiar with the case law that's developed in this area, and in this case, the testimony of the officer, as was pointed out, he had a number of concerns in this case. The stop was certainly – it doesn't appear that counsel is arguing too much the stop because clearly there were tinted windows, and the officer has the right to investigate whether there is reason for those to be tinted. And there is really – I don't think there was anything offered as to why they had the tinted windows, so he could have cited them because the windows were tinted. So any delay in running the driver's license and that [*sic*] is certainly valid because the officer needs to find out who was driving that vehicle.

"The statement that was made, and I believe I heard, was that I don't like to drive.[**8**] I suppose that's true, some people don't like to drive. That combined with the appearance of the defendants and how – I mean, they did appear nervous and wanting to get out of there right away, caused some additional concern, but the primary reason obviously that the officer said that was involved in them asking them to step out was that it wasn't just a little bit of marijuana, he's had a lot of experience, it was a lot of marijuana.

"And we went over whether there's different smells and different strains and that, but the testimony from this officer was pretty clear. He believed that it wasn't just that they were transporting some marijuana for their own personal use, that the smell was overwhelming; and plus the driver made the comment that they had just – when asked about why there was such a smell of marijuana, they had just been to a party.

"So that would provide some belief that maybe they had even been smoking the marijuana or received a lot more marijuana than they should, that they had something in there or that they were – they had some evidence of recently smoked marijuana while they were driving which is illegal. It's still illegal to drive and smoke marijuana in the state of California. I know

---

**8** The driver's statement appears to have been derived from the body-worn camera footage, which is not part of the record on appeal.

I see people driving all the time, but there is a good reason why because that does cause accidents.

"And then obviously from there, we have the delays and resistance and the – well, it's not long after they find the other evidence.

"And so I think given the totality of the circumstances, all the testimony that the [c]ourt received, I do find that the search here was legal. The motion to suppress is denied."

In addition to denying the motion to suppress, the magistrate also held Sandoval to answer.

## IV.     Sandoval's Motion to Dismiss the Information

On or about April 16, 2024, Sandoval filed a motion to dismiss the information pursuant to section 995 and on non-statutory grounds. He argued that the magistrate erred by denying his motion to suppress because Meza did not have reasonable suspicion to stop him or probable cause to search his vehicle. He also argued he was denied the right to effectively cross-examine Meza at the preliminary hearing. Sandoval asked the superior court to grant his motion to suppress and dismiss the information. The prosecutor opposed the motion to dismiss.

**On May 16, 2024, the superior court held a hearing on the motion. After hearing** arguments from the parties, the court denied the motion.

## DISCUSSION

## I.     Meza Had Reasonable Suspicion to Stop the Vehicle

Sandoval argues that the evidence regarding the tinted windows was insufficient to justify a detention under the Fourth Amendment. We disagree.

### A.  Applicable Law and Standard of Review

"At a preliminary hearing on a felony complaint, the defendant may move to suppress evidence that the defendant claims was obtained as a result of an invalid search or seizure. [Citations.] If the motion is denied and the defendant is held to answer, the defendant may renew the suppression motion in the superior

court under the standards governing a section 995 motion.[9] [Citations.] In a section 995 proceeding, the superior court 'merely reviews' the evidence presented at the preliminary hearing; it does not substitute its judgment on the weight of the evidence or resolve conflicts in the evidence. [Citation.] The role of the superior court ' " 'is similar to that of an appellate court reviewing the sufficiency of the evidence to sustain a judgment and involves the determination of a legal issue only.' " ' " (*Price v. Superior Court* (2023) 93 Cal.App.5th 13, 34 (*Price*), fn. omitted.)

"In reviewing a section 995 order, itself reviewing a magistrate's order denying a suppression motion at a preliminary hearing, ' "we, in effect, review the magistrate's decision directly, deferring to the magistrate's factual findings." ' [Citation.] ' "We must draw all presumptions in favor of the magistrate's factual determinations, and we must uphold the magistrate's express or implied findings if they are supported by substantial evidence." ' [Citation.] But, like the superior court, we independently determine whether the search or seizure was reasonable. [Citations.] That is, ' "[w]e judge the legality of the search by 'measur[ing] the facts, as found by the trier, against the constitutional standard of reasonableness.' " ' " (*Price*, *supra*, 93 Cal.App.5th at p. 34.)[10]

As to the constitutional standard, "[a] traffic stop is a seizure subject to the protections of the Fourth Amendment of the United States Constitution." (*People v. Nice* (2016) 247 Cal.App.4th 928, 937.) Law enforcement may conduct a traffic stop if the circumstances show " 'at least reasonable suspicion that the driver has violated the

---

[9] As relevant here, section 995 provides that, on motion by the defendant, the information shall be set aside if "before the filing thereof the defendant had not been legally committed by a magistrate" or if the defendant was "committed without reasonable or probable cause." (§ 995, subd. (a)(2)(A), (B).)

[10] The standards governing review of a section 995 order also apply to Sandoval's other arguments. In the interest of brevity, we do not repeat these standards.

Vehicle Code or some other law.' " (*People v. Durazo* (2004) 124 Cal.App.4th 728, 734–735.)  Reasonable suspicion exists "when the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity." (*People v. Souza* (1994) 9 Cal.4th 224, 231.)  Courts look at the totality of the circumstances to determine whether there was a particularized and objective basis for the detaining officer's suspicion.  (*People v. Butler* (2003) 111 Cal.App.4th 150, 160.)  "Although an officer's reliance on a mere ' "hunch" ' is insufficient to justify a stop, [citation], the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard[.]" (*United States v. Arvizu* (2002) 534 U.S. 266, 274.)

### B. Analysis

In arguing that Meza did not have a sufficient basis to detain him based on the tinted windows, Sandoval relies on *People v. Butler* (1988) 202 Cal.App.3d 602 (*Butler*).  In *Butler,* an officer who conducted a traffic stop saw that the "side and rear windows [of the defendant's vehicle] were darkened." (*Id.* at p. 604.)  The trial court denied the defendant's motion to suppress based on the testimony regarding the window tint. (*Id.* at pp. 605–606.)  On appeal, the Sixth District "disagree[d] with the People's suggestion that seeing someone lawfully driving with tinted glass raises a reasonable suspicion of illegality such that a reasonable inquiry is justified.  Without *additional articulable facts* suggesting that the tinted glass is illegal, the detention rests upon the type of speculation which may not properly support an investigative stop." (*Id.* at p. 607, italics added.)  That the vehicle's windows were darkened did not suggest that the officer "had a reasonable suspicion that the windows in the [vehicle] were made of illegally tinted, rather than legally tinted, safety glass.  He observed the [vehicle] from a distance late at night as he drove by [a store] and again as the car sped past him.  In the context of the

10.

suspicious conduct that he had observed, [the officer] simply admitted that he 'didn't like the idea of the tinted windows.' " (*Id*. at p. 606.)

To begin, we note that counsel for Sikandar stated that, while "not conceding" the detention issue, it was "not the hill [he] want[ed] to stand on." Instead, it was "primarily the search of the vehicle[.]" We agree that the search of the vehicle is the larger issue. Even assuming *Butler* provides the controlling standard, Sandoval's argument that Meza did not have reasonable suspicion to detain him fails.

While not stated directly, drawing all presumptions in favor of the magistrate's findings, Meza testified that the front windows of the vehicle were darkened. Additionally, he was able to view the windows on two occasions, and on both occasions the occupants immediately lowered them when they noticed Meza. Finally, unlike the officer in *Butler*, Meza did not testify that he did not like the idea of tinted windows when discussing the suspicious conduct that he observed. Given these facts, Meza had reasonable suspicion to stop the vehicle, a standard that " 'is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause' " (*Kansas v. Glover* (2020) 589 U.S. 376, 380).[11]

## II.   Meza Had Probable Cause to Search the Vehicle

Sandoval also argues that Meza did not have probable cause to search his vehicle. We disagree.

### A.  Applicable Law

" 'Warrantless searches are presumed to be unreasonable, therefore illegal, under the Fourth Amendment, subject only to a few carefully delineated exceptions.' "

---

[11] In his argument, Sandoval asserts that Meza did not have probable cause to detain him based on the tinted windows. However, as discussed *ante*, an officer needs only reasonable suspicion to conduct an investigatory traffic stop. (See also *People v. Hernandez* (2008) 45 Cal.4th 295, 299; *United States v. Lopez-Soto* (9th Cir. 2000) 205 F.3d 1101, 1104–1105.)

(*People v. Sims* (2021) 59 Cal.App.5th 943, 950 (*Sims*).) "The prosecution bears the burden of establishing an exception applies." (*People v. Hall* (2020) 57 Cal.App.5th 946, 951 (*Hall*).)

"Under the automobile exception, ' "police who have probable cause to believe a lawfully stopped vehicle contains evidence of criminal activity or contraband may conduct a warrantless search of any area of the vehicle in which the evidence might be found." ' " (*Sims*, *supra*, 59 Cal.App.5th at p. 950.) "Probable cause is a more demanding standard than mere reasonable suspicion. [Citation.] It exists 'where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found ....' [Citation.] In determining whether a reasonable officer would have probable cause to search, we consider the totality of the circumstances." (*People v. Lee* (2019) 40 Cal.App.5th 853, 862.)

### B. Analysis

"In 2016, the voters passed Proposition 64, the Control, Regulate and Tax Adult Use of Marijuana Act, which legalized the possession of up to 28.5 grams of cannabis by individuals 21 years or older." (*Blakes v. Superior Court* (2021) 72 Cal.App.5th 904, 911 (*Blakes*), citing Health and Saf. Code, § 11362.1, subd. (a)(1).) "Proposition 64 and, in particular, section 11362.1[, subdivision (c)], … fundamentally changed the probable cause determination by specifying lawfully possessed cannabis is 'not contraband' and lawful conduct under the statute may not ' "constitute the basis for detention, search or arrest." ' " (*Hall, supra,* 57 Cal.App.5th at p. 954.)

Relying on *Blakes*, *supra*, 72 Cal.App.5th 904, as well as *People v. Johnson* (2020) 50 Cal.App.5th 620, Sandoval argues that because marijuana is no longer considered contraband, "the smell of marijuana does not justify searching a car under the automobile exception."

We agree that the odor of marijuana, without more, is now insufficient to establish probable cause that a vehicle contains evidence of criminal activity or contraband. However, these cases do not help Sandoval because Meza relied on significantly more than just the odor of marijuana.[12] (See, e.g., *People v. Moore* (2021) 64 Cal.App.5th 291, 300 (*Moore*) ["while a lawful amount of marijuana is not, *on its own*, enough to establish probable cause, such a lawful amount may establish probable cause where coupled with other factors contributing to an officer's reasonable belief the defendant may be in violation of other statutory regulations of marijuana possession"].)

Meza's testimony established the following: (1) Meza saw Sandoval's vehicle in a "high crime area," and by "high crime area" Meza meant there were a "lot of arrests for drug-related offenses in that particular area;" (2) when the occupants of the vehicle noticed Meza, they avoided eye contact and immediately turned into a shopping center; (3) Sikandar had an out-of-state license, which was relevant because Meza had had multiple interactions with people who came to Modesto from out of state intending to purchase large quantities of marijuana to resell in their state for three to five times the price; (4) after being stopped, both Sandoval and Sikandar showed signs of nervousness; and (5) Meza, who had handled over 200 drug investigations involving marijuana, and who had informal training at a marijuana dispensary that provided him a point of reference for the smell of different quantities and different strains of marijuana, smelled

---

[12] Sandoval also argues that *Blakes* stands for the proposition that "[t]here are two ways that marijuana in a car would support probable cause to search the car: driving under the influence of marijuana and driving with an open container of marijuana." We disagree with Sandoval's reading of *Blakes*.

While *Blakes* did discuss two illegal uses of marijuana that could have supported probable cause to believe a crime had been committed, it does not appear the court was asked to determine whether those are the only two possible illegal uses, nor did it so find. (*Blakes*, *supra*, 72 Cal.App.5th at pp. 911–912.) "It is axiomatic that cases are not authority for propositions not considered." (*People v. Casper* (2004) 33 Cal.4th 38, 43.)

an "overwhelming odor of marijuana" when he was talking with the occupants of the vehicle.

We acknowledge that not only is the odor of marijuana alone insufficient to establish probable cause, but several of the facts above, even in combination, may not have been sufficient to establish probable cause. (See, e.g., *Moore*, *supra*, 64 Cal.App.5th at p. 302 ["Nervousness by itself … does not establish probable cause"]; *People v. Flores* (2024) 15 Cal.5th 1032, 1045–1046, 1048–1049 [holding that while the defendant being "present in a high crime area" and "repeatedly tr[ying] to avoid being seen by, or engaging with, the police" were noteworthy facts, they were insufficient to establish reasonable suspicion].) However, when all the facts are considered together, Meza's observations provided probable cause for a search because they are sufficient to warrant a man of reasonable prudence in the belief that an illegal quantity of marijuana would be found within the vehicle.[13]

## III. The Magistrate Did Not Deny Sandoval Effective Cross Examination

Sandoval argues that the magistrate denied his right to due process by refusing to allow him to effectively cross-examine Meza at the preliminary hearing. We disagree.

### A. Additional Background

According to Sandoval,

> "The magistrate sustained the prosecution's objections to the following questions:

---

[13] Sandoval also argues that Meza "did not have sufficient training, education, or experience to opine that, based on the smell alone, petitioner possessed an amount of marijuana that exceeded the legal limit." Given this, Sandoval argues that the magistrate erred by relying on Meza's testimony regarding the odor of marijuana.

This argument fails because the magistrate did not rely on Meza's purported ability to determine the difference between a legal amount and an illegal amount of marijuana based on smell alone, and neither do we. As discussed in this opinion, Meza only needed probable cause to search the vehicle. He did not need to definitively establish that an illegal amount of marijuana was inside the vehicle before searching it.

"1. [Meza], isn't it true that you have not been trained to determine the difference between an ounce of marijuana versus more than an ounce of marijuana based on the smell alone? [Citation.]

"2. Trained or not, officer, isn't it fair to say that it's impossible to determine whether or not marijuana by smell – the marijuana alone is either an ounce or more than an ounce? [Citation.]

"3. During none of your training were you ever trained to discern through your nose alone whether or not marijuana was legally possessed as in an ounce or less or illegally possessed by this quantity? [Citation.]

"4. In your experience in the field and your informal training at this dispensary, and in your training, isn't it true that you have never been able to, by smell alone, determine whether – the weight of marijuana? [Citation.]

"5. In your formal training, informal training at the dispensary and your experience in the field, isn't it true that you have never been able to, by smell alone, determine whether or not marijuana was possessed legally or illegally? [Citation.]

"6. [Meza], in this dispensary …, in your training in the field, or your experience in the field, fair to say that a small amount of marijuana can be very pungent? [Citation.]

"7. But nowhere in that training informally at the dispensary … or in your experience in these 200 investigations have you been able to determine the weight of marijuana based on its smell, right? [Citation.]"

Sandoval further argues that he was "prevented from effectively cross-examining … Meza about his assertion that [Sandoval] appeared nervous because of his breathing and elevated blood pressure, which was also a justification for detaining and searching [him]."

**B.  Applicable Law**

" 'An information … will not be set aside merely because there has been some irregularity or minor error in procedure in the preliminary examination. [Citation.] But where it appears that, during the course of the preliminary examination, *the defendant has been denied a substantial right*, the commitment is unlawful within the meaning of

15.

section 995, and it must be set aside upon timely motion.' " (*Jennings v. Superior Court* (1967) 66 Cal.2d 867, 874.) "It is well established that the defendant at a preliminary examination has the right to examine and cross-examine witnesses for the purpose of overcoming the prosecution's case or establishing an affirmative defense." (*Jones v. Superior Court* (1971) 4 Cal.3d 660, 667.)

### C. Analysis

We have reviewed the transcript of the preliminary hearing, which spanned three days. While certain objections were sustained, defense counsel were allowed to, and did, cross-examine Meza at length regarding his ability to distinguish quantities of marijuana based on odor. Moreover, counsel for Sikandar was ultimately allowed to ask Meza whether he could determine the quantity of marijuana based on odor alone, and Meza admitted that he could not. Defense counsel were also allowed to, and did, cross-examine Meza at length about his reasons for stopping and searching the vehicle.

Accordingly, even if the magistrate limited some lines of potentially relevant questioning,[14] the magistrate did not violate Sandoval's right to cross-examination. (See *People v. Stone* (1983) 139 Cal.App.3d 216, 217 ["a magistrate conducting a preliminary hearing … is within his [or her] discretion in denying cross-examination of a prosecution witness as to matters not related to the criminal event itself and which only affect the weight of the direct testimony"]; *Farrell L. v. Superior Court* (1988) 203 Cal.App.3d 521, 528 [same]; Evid. Code, § 765, subd. (a) ["The court shall exercise reasonable control over the mode of interrogation of a witness so as to make interrogation as rapid, as distinct, and as effective for the ascertainment of the truth, as may be[.]"].)

---

[14] We note that, contrary to Sandoval's assertion, counsel for Sikandar was allowed to cross-examine Meza regarding why Meza believed the occupants of the vehicle were breathing fast. He asked Meza, "How fast were they breathing," to which Meza responded, "It just [*sic*] I could see their chest were rising and falling quickly. He then asked Meza, "Was that the sole indicator that you thought they were breathing fast," to which Meza responded, "Yes."

16.

## DISPOSITION

Sandoval's petition for a writ of mandate or prohibition is denied.

FAIN, J.*

WE CONCUR:

DETJEN, Acting P. J.

PEÑA, J.

---

* Judge of the Fresno Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.